Williamson v. Yager, &c.

CASE 53—PETITION EQUITY—FEBRUARY 26.

# Williamson v. Yager, &c.

APPEAL FROM SHELBY CIRCUIT COURT.

1. ASSIGNMENT OF NOTES—CONSIDERATION.—Where the payor in several notes, and one who was entitled to the notes as devisee under the will of the payee, differed as to the credits to which the payor was entitled, and the payor finally agreed to and did execute new notes to the devisee for the full amount she claimed to be due, in consideration of her agreement to assign the new notes to his children, and the devisee did, by written indorsement, assign them as agreed, but did not deliver them to the assignees, there was a sufficient consideration for the contract of assignment, which will be enforced by compelling a delivery of the notes.

2. CONSIDERATION FOR CONTRACT.—A consideration moving from one person will uphold a promise to, or an agreement made with, a third person.

3. A GIFT OF PERSONAL PROPERTY MAY BE MADE BY A DECLARATION OF THE DONOR THAT HE HOLDS THE PROPERTY IN TRUST FOR THE DONEE, and it is not necessary that this declaration should be made in so many words; the conduct of the donor may amount to such a declaration.

In this case the payee in certain notes assigned them by a written indorsement on each note, but announced that she would hold the notes for the assignees. The assignor afterward erased the assignments, with the consent of the makers and the assignees, in order that she might sue on them in her own name, which she did, for the benefit of the assignees, and, after the judgment was obtained, treated it as belonging to the assignees. In this action by the assignees to have the assigned notes declared to be theirs: Held—That the notes belonged to plaintiffs. The assignor never attempted to recall the gift, and if she made the attempt it was ineffectual, as the title to the notes had passed by the declaration of trust, and the gift could not be recalled without the consent of the donees.

4. HUSBAND AND WIFE—CONSTRUCTION OF ANTENUPTIAL CONTRACT— Where, by an antenuptial contract, it was agreed that the husband should be entitled to the use of the income of the wife's estate jointly with her. and that the wife should have full control of her estate, with power to dispose of it as she pleased, the husband's right to the use of the income was subject to the wife's right of disposal, which is not limited to a disposition by will or after the death of the husband.

Williamson v. Yager, &c.

P. B. MUIR for appellant.

1. In arriving at the meaning of the antenuptial contract, some effect must be given to every part of it. (Broom's Legal Maxims, marginal page 522; Peter v. Daniel, 5 C. B., 579; Shep. Touch., mar. p. 87.)

2. The pretended transaction is not supported by either a good or a valuable consideration.

As to what is necessary to constitute a *good* consideration, see Mark v. Clark, 11 B. M., 46; Graves v. Graves, 7 B. M., 213; Cotton v. Graham, 84 Ky., 675.

3. There was not an *executed, irrevocable* gift of the notes by Mrs. Williamson to the claimants.

Delivery, actual or constructive, is essential to the validity of every gift. (Black. Com., book 2, p. 442; Payne v. Powell, 5 Bush, 252; Inlow v. Commonwealth for, &c., 6 Mon., 75; Duncan's Adm'r v. Duncan, 5 Litt., 12; Knott's Adm'r v. Hogan, 4 Met.. 100; Kemper v. Kemper's Adm'r, 1 Duv., 402; Turpin v. Thompson, 2 Met., 420; Merriwether v. Morrison, 78 Ky., 575.)

Written transfers can not satisfy the requirements of delivery. (Payne v. Powell, 5 Bush, 252; 1 Parsons on Contracts, 234, 235.)

4. No enforceable trust was created. (Bibb v. Smith, &c., 1 Bibb, 482; Banks v. May's Heirs, 3 Mar., 436; McIntire v. Hughes, 4 Bibb, 187; Antrobus v. Smith, 12 Ves. Jur., 39, note *a*; Coleman v. Sarrel, 1 Ves. Jr., 55; Cotton, Trustee, v. Graham, 84 Ky., 676; Bispham's Prin. of Equity; Barkley v. Lane, 6 Bush.)

The court will not give effect to an imperfect transfer by treating it as a declaration of trust. (Snell's Prin. of Eq., 81; Farmer v. Skenner, 11 Bush, 127.)

5. There was a waiver by executor and devisees of the statutory affidavit and demand within one year. (Croninger v. Marthen, 7 Ky. Law Rep., 599; Jett's Ex'r v. Cockrell's Ex'r, 85 Ky., 350.)

MUIR, HEYMAN & MUIR, J. C. BECKHAM, counsel for appellant.

HUMPHREY & DAVIE, L. C. WILLIS, for appellees.

1. The preponderance of the evidence in this case shows that Henry C. Yager, when dying, waived certain claims and credits that he had against Mrs. Williamson, in consideration of her agreeing to hold the notes in controversy in trust for his children. This created a trust in her for a valuable consideration, and even if the trust were executory, being for valuable consideration, it could be enforced against her. (Barton v. Barton, 80 Ky., 212; Taylor v. Patrick, 1 Bibb, 168; 4 Dana, 623.)

2. But whether there was valuable consideration or not is immaterial; for the vast preponderance of evidence shows that Mrs. Williamson de-

clared a trust in these notes for the benefit of the children, and declared that she would thereafter hold the legal title and the possession of the notes in trust for the children. Such a voluntary declaration of trust, though without valuable consideration, will be enforced. (Barkley v. Lane, 6 Bush, 587; Barton v. Barton, 80 Ky., 212.)

3. The declaration by Mrs. Williamson that she would thereafter hold these notes in trust for the children, although not made for valuable consideration, created a valid and enforceable trust, which she could not thereafter revoke. (Perry on Trusts, secs. 96, 98, 99; Lewin on Trusts, 8th ed., pp. 67, 74, 75; Hill on Trustees, side page 88; Jones v. Locke, Law Reports, 1 Ch. App., 25; Wheatley v. Purr, 1 Keene, 551; Lane v. Ewing, 31 Mo., 75; Morgan v. Mallison, 10 Equity; Weaver v. Emigrant, 17 Abbott's New Cases, 82; Martin v. Punk, 75 N. Y., 134; Mabie v. Bailey, 95 N. Y., 206; Minor v. Rogers, 40 Conn., 513; Ketchwick v. Manning, 1 Dmng., 189.)

4. Under the antenuptial contract between Mrs. Williamson and her husband, she had full power to become a trustee, although a married woman, and had full power to declare this trust. (Perry on Trusts, secs. 38, 39, 48.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The question is, did the seven notes—two for one thousand dollars each, and five for eight hundred dollars each—pass as a gift from the appellant to the seven appellees, children of Henry C. Yager. The undisputed facts are these: Henry C. Yager was, in his life-time, indebted to his brother, Silas B. Yager, in a large sum; and after the death of Silas B. Yager, the appellant, being entitled to said indebtedness by the devise of her husband, Silas B. Yager, caused, on the first day of June of 1880, Henry C. Yager to execute new notes to her for said amount, seven of which were executed for the respective sums indicated. On the same day, the appellant, by written assignment on the back of each note, assigned it to each of the seven appellees. The following is the assignment, differing only in the names of the assignees:

"I hereby assign this note to Henry T. Yager, with

six per cent. interest from date, the interest and principal to be paid to said Henry T. Yager at the settlement of H. C. Yager's estate.

"LUISA Y. WILLIAMSON."

Said notes were not delivered to the appellees, but were retained by the appellant, and she thereafter erased the assignment upon each note, and brought suit thereon against Henry C. Yager, together with three other notes taken from him at the same time, and obtained judgment by default thereon; but the judgment was not collected, except a part of the interest on the three notes last mentioned. Henry C. Yager having died, said seven children, appellees, brought this action to have said seven notes declared to be theirs by reason, first, of said assignment for a valuable consideration; or, second, by reason of a declaration of trust by the appellant.

As to the first proposition, the weight of the evidence is that on the occasion of Henry C. Yager executing the notes, he objected to doing so for the reason that he had not received proper credits, but upon appellants agreeing to give said notes to the appellees, he signed them; and, pursuant to said agreement, the appellant did assign them to the appellees. Now, this contention for additional credits, and refusal to sign the notes because they were not given, and the agreement of the appellant to give them to the appellees if he would sign them, and on that consideration he did sign them, certainly constitutes a valuable consideration for the assignment of them to the appellees, which consideration is sufficient to authorize the enforcement of the contract of

assignment, notwithstanding the fact that the appellant did not deliver the possession of the notes to the appellees. The valuable consideration for the transfer of title gave the transfer legal efficacy, which will be enforced by compelling a delivery of the thing itself. It is also well settled that a consideration moving from one person will uphold a promise to, or an agreement made with, a third person.

But, if we are mistaken about the transfer having been made upon a valuable consideration, we are clear that the title to these notes passed to the appellees by a declaration of trust. The correct rule upon this subject seems to be epitomized in volume 8, American and English Encyclopædia of Law, page 1323. It is there said, that the title to personal property may be transferred without delivery of possession, or without consideration, by a declaration of trust. That the title to personal property can ordinarily only be transferred, by way of gift, by a delivery of the property actually or constructively to the donee, or to some person in trust for him. Also the donor may constitute himself a trustee for the donee, but in order to do this, it is necessary for the donor to clearly and unequivocally declare that he henceforth holds the property as trustee for the donee. This declaration may be done by so many words, or by acts amounting to the same thing. When this trust is clearly created by the donor, equity will uphold it, and treat the gift as executed.

If one delivers possession of personal property to a trustee to hold as a gift for the donee, it is certainly a valid gift, and if he expressly says, or does acts

amounting to the same thing, that he constitutes himself a trustee to hold the property for the donee, we perceive no reason why this should not be as valid and binding as a delivery of the property to a third person, to be held in trust for the donee, the only difference being that in the first-named case the trust, by clear and explicit language, or acts amounting to the same thing, should be perfectly created in order to prevent the confounding of the trust with an imperfect gift.  Therefore, in seeking to enforce the trust, the donee must show that the donor has left nothing undone that is necessary to create it; and if it appears that the donor has yet to make a conveyance to the donee, the trust will not be enforced, because not perfectly created; but if nothing is required of the court but to give effect to the trust as an executed trust, it will be carried into effect, although it was without consideration, and the possession of the property was not changed.  This is upon the broad principle that in such matters a party may make himself trustee as well as a third person.

This court is in line with the foregoing views.  In Barkley v. Lane, &c., 6 Bush, 589, it is said: "Nor was it essential to the validity of the trust that a trustee be formally appointed, as the owner of the property may convert himself into a trustee, and hold it for the benefit of another without transmitting the possession."  In that case there was a gift without delivery of possession or without consideration, but the owner had clearly and explicitly made himself trustee.  Also, to the same effect is Barton v. Barton, 80 Ky., 215.

The fear of counsel that the rule laid down in the Barkley case, if adhered to, will lead to fraud and perjury, is without foundation, because that rule is but the repetition of an old rule that has been universally approved, and, as yet, the apprehension of counsel has not been realized.

It is clearly established by the proof that it was the fixed purpose of the appellant to give the appellees a thousand dollars each, the three other children having received a thousand dollars each from the appellant's first husband; and she having given five of the appellees two hundred dollars each, five of the notes were executed for eight hundred dollars each, which were intended for said five children, and the remaining two notes were executed for a thousand dollars, which were intended for the two children that had not received any thing. It is also clearly proven that the appellant, at the time the notes were executed and assigned to the appellees, clearly and explicitly announced that she would hold said notes for the appellees, saying that if they got possession of them they might dispose of them before the time for their payment. It also clearly appears that she did thereafter hold said notes for the appellees; but it is said that she thereafter erased the assignments, and sued on the notes as her own, and obtained judgment, with the consent of the maker of the notes and the appellees, thereby showing that the gift was unexecuted. But it clearly appears that the appellant, becoming alarmed about the solvency of the maker of the notes, which, if he did, would defeat the substantial realization of the gifts, brought suit on the notes

for the benefit of the appellees; and in order to avoid any suspicion of a fraudulent collusion for the benefit of the appellees as children of Henry C. Yager, she erased the assignments and brought suit in her own name. Also, her conduct after obtaining judgment in not claiming interest on these notes, but claiming and collecting interest on the three other notes, on which she, at the same time, had obtained judgment, and only claiming this part of the judgment as belonging to her, but the other part as belonging to the appellees, as well as the interest thereon, shows that she never recalled the gift, even if she could, but held it in trust for appellees. But conceding that she, by said act, did undertake to recede from the gift and assert her right to the notes, she could not do so after having declared a perfect trust in favor of the appellees. The title to the notes by that act passed to them, which the appellant could not thereafter recall without the appellees' consent, which they never gave. But it is said that the appellant, at the time of the gift, was a married woman, consequently she could make no gift. It is true that ordinarily coverture destroys the wife's legal identity, and renders void any contract she may make, and a gift by a married woman being a contract, it is likewise void. But it is equally true that by an antenuptial contract the wife may retain her legal right to contract and dispose of her property as a *feme sole*, and pursuant to this right the appellant and her second husband entered into the following antenuptial contract:

"That so much of the funds as may be derived from both estates, accruing from rents, interest or

personal effects, shall be for the benefit of both parties; and the said Williamson of the first part agrees that said Louisa of the second part shall have full control of all her estate, to dispose of or manage as she thinks proper; and he further agrees that should he be the longest survivor, he shall turn over to said Louisa's administrator or executor all the remains of her estate, real and personal, that may be in his possession at the time of her decease."

This agreement certainly reserves to the appellant the power to dispose of her property as a *feme sole;* but the appellant contends that inasmuch as the rents and interest accruing from said property were reserved to the joint use of the husband and the appellant during their joint lives, the appellant could not give the notes away during the life of the husband, for the reason that such gift, carrying the interest and depriving the husband of the joint use of it, would violate the terms of the agreement. It is also said that that part of the agreement that gives the appellant the right to dispose of her property absolutely, being incompatible with that part of it that gives to the husband the right to the joint use of the interest, the right of the appellant, in order to make the agreement consistent, should be construed as reserving to herself the right to dispose of her property by last will, or after the death of her husband only. This restriction would certainly do great violence to the language employed, and would defeat the paramount object that the parties evidently had in view, to wit: That of reserving to the appellant, so far as her property was concerned, the

rights of a *feme sole.*   Therefore, we think that the rational construction is that the appellant's right to dispose of her property at any time, as she pleased, was absolutely reserved, and the husband's joint use of the rents and interest "accruing" from this property should be subject to this right of disposal. When it is observed that the husband gave to the appellant the joint use of the rents and interest "accruing" from his property, and when it is remembered that that fact did not in anywise restrict his power of alienating said property—indeed, the contention that it did would be deemed absurd—it is manifest that the appellant was not thus, and should not be, restricted by the agreement.

The judgment is affirmed.