CASE 97—EQUITY—NOVEMBER 23.

## Krankel's Executrix v. Krankel, by Etc.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

104 745
116 980
104 745
116 980
104 745
f129 141

1. PAROL TRUST.—It is well settled that a completed parol voluntary trust is enforcible and in order to render such a trust completed and enforcible the donor need not use any technical words or any express terms creating or declaring the trust but must employ language which shows unequivocally the intention on his part to create or declare the trust in himself for the donee. Where this is done, it is not necessary that the donor should part with the possession. Where the insuree in a life policy taken out for the benefit of his father and mother foregoes his purpose to surrender his policy and take out one payable to his wife upon the representation of the beneficiaries of the old policy that they will hold the proceeds for the benefit of the insuree's wife and child, the court will enforce the trust thus declared.

2. PAROL TRUST—EVIDENCE.—Where a beneficiary in such a policy recognized the obligation resting upon her to apply the proceeds to the benefit of the insuree's son; and invested the money as a special interest-bearing deposit and regularly turned over the interest for the support and maintenance of the in-

suree's son, the evidence is sufficient to establish the identity of the fund and to enforce the parol trust.

C. B. SEYMOUR AND P. A. GAERTNER FOR APPELLANT.

The trust sought to be enforced in this case is invalid, (1st), because there is no identification of the fund sought to be declared in trust; and (2d), because the evidence is insufficient to show the donor's intention to create such trust. Perry on Trusts, secs. 77, 96, 97; Roche v. George's Exr., 93 Ky., 609; s. c. 13 Ky. Law Rep., 493; Barkley, &c. v. Lane's Exr., 6 Bush, 587; Williamson v. Yeager, 91 Ky., 282; 13 Ky. Law Rep., 273; Pomeroy's Equity (1892 Ed.), sec. 997; Young v. Young, 80 N. Y., 422-436; s. c. 36 Am. Rep., 634; Story's Eq. Jur., secs. 433 and 987; Martin v. Funk, 75 N. Y., 134; s. c. 31 Am. Rep., 446.

SAML. B. KIRBY FOR APPELLEE.

It is well settled that a trust can be created in personal property by parol or by the donor declaring himself to be the trustee. Pom. Eq. Jur., secs. 996, 998; Williamson v. Yeager, 91 Ky., 282; Am. & Eng. Enc. of L., vol. 8, p. 1323; Barkley, &c. v. Lane's Exr., 6 Bush, 587; Roche v. George's Exr., 93 Ky., 609.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

The executrix of Magdalena Krankel prosecutes this appeal from a judgment holding that $1,000, which had been received by her from a policy of insurance on the life of her son Charles, was subject to a trust in favor of her grandson, the appellee. In 1884 Charles Krankel, at that time a bachelor, residing with his father and mother, took out a policy of insurance on his life for $2,000 in the Knights of Honor, which he had made payable to them. He regularly paid the dues on this policy until he died, in 1892, leaving a widow and a son, Charles C. Krankel, the present appellee. The testimony shows that after his marriage Charles Krankel desired to have the policy of insurance changed, and his wife and children made the payees therein, and that his mother prevented this from being done by refusing to surrender the original policy

for cancellation by the company; that in October, after the death of Charles Krankel, the insurance money was paid over to his father and mother; that, as soon as his father collected his $1,000 due upon the policy, he paid it over to the widow of his dead son; and that his wife, after collecting her part of the policy, placed it, as a special time deposit, in the Western Bank, with an agreement that it should bear interest, first at the rate of 4 per cent. per annum, and subsequently at the rate of 3½ per cent. This investment of the fund was never changed by her during her lifetime, and all the interest accruing thereon was paid over by her to the mother of appellee, for his maintenance and support. The grandmother died in December, 1895; and this suit was brought by her grandson, the appellee, to enforce an alleged voluntary trust on her part of this money in his favor. It is claimed that the grandmother, after she collected the money, recognized that it belonged to appellee, and that she set it aside for his use, and treated it as his property, during her lifetime. The executrix of Magdalena Krankel resists the claim, alleging that there was no consideration to uphold the alleged voluntary trust; that it had never been executed; that, when the fund in question was collected by her testatrix, she had at once mixed it with her other money; and that no trust could be created in the fund, because at the time of the alleged creation thereof there was no specific, separate chose to which the trust could attach.

The question raised is one which has been the subject of careful consideration by this court and the text writers, and the general doctrine is well settled that a completed parol voluntary trust is enforceable, and, in order to render such a trust valid and enforceable, the donor need not use any technical words or language in express terms cre-

ating or declaring the trust, but must employ language which shows unequivocally an intention on his part to create or declare a trust in himself for the donee. It is not essential that the donor should part with the possession in cases where a trust is thus created or declared. If there is a mere intention to create a trust, or a mere voluntary agreement to do so, and the donor contemplates some further act to be done by him to give it effect, the trust is not perfect, and equity will not lend its aid to enforce it. See 2 Pom. Eq. Jur., sec. 997; Barkley v. Lane, 6 Bush, 589; Williamson v. Yager, 91 Ky., 282 [34 Am. St. R., 184; 15 S. W., 660]; and Roche v. George's Ex'r, 93 Ky., 609 [20 S. W., 1039]. Mr. Perry, in section 99 of his work on Trusts, says: "Whether the trust is perfectly created or not is a question of fact in each case; and the court determining the fact will give effect to the situation and relation of the parties, the nature and situation of the property, and the purposes or objects which the settler had in view in making the disposition." At the time Charles Krankel took out the policy of insurance, he had nobody dependent upon him for support. He was thirty-eight years old, residing with his father and mother, and it was natural that he should have made the policy payable to them. But after his marriage, and the birth of his child, there was both a legal and moral obligation on him to make provision for them; and it is evident from the testimony that he recognized this fact, and desired the surrender of the old policy, in order that he might have it changed, and have his wife and children made the beneficiaries thereof, as he had the legal right to do. And there is testimony in the record which conduces to show that he was induced to forego this purpose by assurances from his father and

mother that in the event of his death his wife and child should have the benefit of the insurance, although this testimony is not as conclusive as it might be. But it is evident that, upon his sudden taking off, his father and mother both recognized the obligation resting upon them to use the proceeds arising from this policy for the benefit of his wife and child, whom he had left entirely destitute. The father immediately paid over his part of the policy to the widow, and the mother, on the second day after the death of her son, and while his body lay unburied in her presence, informed Mrs. Weber that "Charles, while he was single, had made his insurance policy to them, but that she did not want it, and that his widow should have it." Her son Jacob Krankel, Jr., who was the agent of the insurance company which issued the policy, and who collected the greater part of the premiums thereon from his deceased brother, testifies that he had a number of conversations with his mother about this $1,000; that on several occasions she told him that she had the money in bank, and that she had been paying the interest accruing thereon to the widow for the support of the child, and that she held the $1,000 in trust for her grandson, and would secure it to him after her death. The mother of appellee testifies that she had several conversations with Mrs. Krankel after the death of her husband, in which she urged her to turn over the $1,000 to her, as the husband had done, but that the old lady invariably responded, "No; that the money was the boy's, and that it would stay for the boy; that she had invested it for the boy, and that it would be the boy's;" and that up to the death of Mrs. Krankel the interest on the $1,000 was regularly paid over to her for the support of appellee. The cashier of the Western Bank testifies that on October 31, 1892, his bank

borrowed this $1,000 from the old lady, and issued to her a time certificate of deposit, bearing interest, which was renewed from time to time; that the rate of interest paid by the bank was first 4 per cent., and afterwards 3½ per cent., per annum; that this investment was never changed or disturbed by the old lady in any way during her lifetime, except to collect the interest as it accrued, but that the fund had been checked out, after her death, by the appellant. It is evident from this testimony that the old grandmother recognized the obligation resting upon her to apply this $1,000 for the benefit of her grandson, and that she set apart the fund for his benefit. This is shown by her declarations, but even more strongly by her acts in investing the money as a special interest-bearing deposit, and regularly turning over the entire interest thereon for the support and maintenance of appellee. It may be that the old lady, with characteristic German prudence, thought this the best way to secure to her grandson the full benefit of the money which had come by reason of the death of his father. She and the children of her deceased husband were amply provided for by his will, as he left a good estate; and whilst the draftsman of her will testifies to facts which tend to show that shortly before her death she contemplated withdrawing the gift in favor of her grandson, and asserted a right to dispose of the fund in another way, yet this was after she had declared a trust in favor of appellee, and after the title to the $1,000 had vested under the trust. And, having created a complete trust, it was beyond the power of decedent thereafter to have revoked it, without the consent of the donee. For the reasons indicated the judgment is affirmed.