## St. Catherine's Cemetery, et al. v. Fidelity Trust Company, Assignee, et al.

(Decided March 14, 1913.)

### Appeal from Nelson Circuit Court.

1. **Trusts—Created by Deed—Section 74, Kentucky Statutes.**—Where the owner of a bond delivers it to a trustee, who executes, acknowledges and delivers an instrument in writing which declares the trust with reasonable certainty, and said instrument is thereafter recorded, the trust so declared is an express trust created by deed, and the claim of the cestui que trust is a preferred debt against the assigned estate of the trustee under section 74, Kentucky Statutes, providing "except that debts due by the assignor as guardian, committee, trustee of an express trust created by deed or will, or as personal representative, shall be paid in full before the general creditors receive anything.".

2. **Deeds—Creating Trust in Intangible Personal Property—Recordable.**—A deed creating a trust in intangible personal property is a recordable instrument, so far as creditors are concerned.

3. **Trusts—Revocable—Validity.**—A revocable trust which is not revoked is valid.

4. **Trusts—Not Good as Gift Inter Vivos—Validity.**—Where a trust is intended, the fact that it is not good as a gift inter vivos will not defeat the trust.

C. T. ATKINSON, F. E. DAUGHERTY for appellants.

JOHN S. KELLEY, McDERMOTT & RAY and KELLEY & CHERRY for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Sylvester Johnson, a wealthy citizen of New Haven, Kentucky, died July 29, 1889. About a year before his

death, he delivered to his nephew, Sylvester Rapier, a bond for $500. At the same time Rapier executed the following writing:

"Sylvester Johnson has this day given me in trust one bond for five hundred dollars, No. 129, issued by the southern division of the Cumberland and Ohio Railroad Company, dated September 2, 1878, and due on the 2nd day of September, 1898, which I am to hold in trust for the following purpose, viz.:

"During his life I am to pay him the interest on said bond as it falls due, and after his death I am to use the interest in keeping in good repair the Cemetery of St. Catherines at New Haven, Nelson County, Kentucky, and at the death of said Rapier, then said bond or the proceeds of same is to be turned over to the Parish priest of St. Catherines Church, wherever he may be at that time for the purposes aforesaid. But it is expressly understood and agreed that if said Rapier should die before said Johnson, then said bond and all unpaid interest is to come back to said Johnson to do as he may think proper with it.

"And it is further agreed that in the event that said Johnson at any time during his life time demand the return of said bond, then said Rapier is to surrender it with all unpaid coupons to said Johnson; this April 21st, 1888.                    SYLVESTER RAPIER."

State of Kentucky,
County of Nelson.          ss.

"I, W. J. Dalmazzo, Clerk of the Nelson County Court, do certify that on this day the foregoing contract was produced to me in said county and acknowledged by Sylvester Rapier to be his act and deed and same is with this certificate duly recorded in my office.

"Given under my hand this the 10th day of March, 1891.                    W. J. DALMAZZO, Clerk."

Rapier held the bond in question until its maturity on September 2, 1898. The bond was then paid, and Rapier thereafter held the proceeds. Some time after the death of Sylvester Johnson Rapier expended a large part of the interest on the fund in keeping the St. Catherine's Cemetery in repair. On February 9, 1912, Rapier made a general deed of assignment to the Fidelity Trust Company of Louisville, Kentucky. At the time of the

assignment the accrued interest on the proceeds of the bond amounted to about $150, thus making the total amount of the fund in the hands of Rapier $650.

The Fidelity Trust Company, as assignee of Sylvester Rapier, brought this action in the Nelson Circuit Court against Sylvester Rapier and others for the purpose of settling the assigned estate. The case was referred to the master commissioner to hear proof and report on claims. Among the claims filed before the commissioner was that of St. Catherine's Cemetery for the sum of $650 growing out of the transaction hereinbefore referred to. The commissioner allowed the claim in question as a preferred claim against the assigned estate. The trust company filed exceptions to the master commissioners' report. The exceptions were sustained, and the chancellor adjudged that the claim in question was not a preferred debt, but was payable only as a general claim against the assigned estate. From that judgment this appeal is prosecuted.

Section 74, Kentucky Statutes, is as follows:

"Every voluntary assignment made by a debtor to any person in trust for his creditors shall be for the benefit of all the creditors of the assignor, in proportion to their respective claims, after the payment of the expenses of the trust; except that property, or any part thereof, conveyed by the deed of assignment, and upon which there is a valid lien, shall be first applied to the discharge of the lien debt; and if the property is not sufficient to satisfy the lien, the lien creditor shall have the right to present the remainder of his debt unsatisfied by the lien property as a claim against the estate, and receive thereon his *pro rata* share of the assets in the same manner as creditors whose claims are not secured by a lien; except that debts due by the assignor as guardian, committee, trustee of an express trust created by deed or will, or as personal representative, shall be paid in full before the general creditors receive anything."

The question presented is: Is the claim in question a debt due by a trustee of an express trust created by a deed? If so, it is a preferred debt, and the judgment is erroneous; if not, it is not a preferred debt, and the judgment is proper.

Express trusts are usually defined to be those which are created by the direct and positive act of the parties, by some writing or deed or will. Story's Equity Juris-

prudence; Caldwell v. Mathewson, 57 Kas., 258, 45 Pacific, 614; 39 Cyc., 24. While express trusts in personalty may be created by parol, 39 Cyc., 51, express trusts are generally created by instruments that point out directly and expressly the property, persons and purposes of the trust. Hence, they are called direct or express trusts in contradistinction to those that are implied, presumed or construed by law to arise out of the transactions of the parties. Perry on Trusts, section 24. No particular formality is required for the creation of the trust. Where the trust is required to be in writing, it is sufficient if it set out the terms of the trust with sufficient certainty to render it enforceable. It is not always necessary that the settlor or creator of the trust should sign the instrument creating the trust. Thus, in England, under the statute of 29 Car. II,, c. 3, sec. 7, requiring the trust to be manifested in writing, it was held that letters from the trustee disclosing the trust were sufficient. Forester v. Hale, 3 Ves. Jr., 696. The person acquiring title to property may create an enforcible express trust therein by expressly agreeing to hold in trust for another or to convey to him. 39 Cyc., 62. The statute under consideration requires an express trust to be created by a deed or will. Suppose that the subject of trust in this instance had been real estate, and the settlor had conveyed it to the trustee by deed absolute in form, and the trustee had then executed and delivered to the settlor a deed reciting that it was held in trust, would it be contended that the trust must fail because the deed creating the trust was not signed by the settlor? Manifestly, therefore, if the subject of the trust be intangible property, such as a bond, and it be actually delivered to the trustee, is not a trust created by deed if the trustee, himself, execute and deliver a deed declaring the trust? The question must be answered in the affirmative. Nor will such a trust be permitted to fail because the instrument executed and delivered by the trustee does not possess all the formal requisites of an ordinary deed. The deed need not be in the form of a grant, for a declaration of trust is not necessarily a grant. We think that the word "deed" as employed in the statute means an instrument which is sufficient for the purpose of creating or declaring a trust. It is also necessary that it should be a recordable instrument. Kentucky Statutes, section 496. While it is true that we have held that a mortgage of intangible per-

sonal property is not recordable so as to constitute constructive notice to a *bona fide* purchaser of such property from the montgagor, who has possession of it, Spalding v. Paine's Admr., 81 Ky. 416, yet it is perfectly plain that the legislature intended to make an exception in the case of trusts, so far as creditors are concerned. While at common law, no possibility, right, title or chose in action could be granted or assigned to strangers, the equity rule is different, and choses in action, expectancies, contingent interests and even possibilities may be assigned, and a valid trust created in them.   Perry on Trusts, Section 68.   To hold, therefore, that a deed creating a trust in intangible personal property could not be recorded so as to affect creditors would make it impossible ever to create a valid trust in such property where the rights of creditors are concerned.   By declaring that debts due by the trustee of an express trust created by deed should be paid in full before the general creditors, it was the manifest purpose of the legislature to authorize the creation of an express trust in intangible personal property, as well as other property, by deed which could be recorded so as to affect creditors.

The fact that the trust in this instance was revocable does not affect its validity.   This is not a contest between a *cestui que* trust and a settlor during his lifetime. Though the settlor had the right to revoke the trust during his lifetime, he did not do so.   The fact that it was revocable then does not affect its validity now.   As a matter of fact, the trust was not revoked, and upon his death it was fully executed, and thereafter continued as a valid and subsisting trust in favor of the *cestui que* trust.   We deem it unnecessary to discuss whether or not the delivery of the bond in question would have been valid as a gift *inter vivos*.   While it may be true that where a gift *inter vivos* is intended, but for some reason is imperfect, a trust cannot then be substituted for the gift; yet, on the other hand, where a trust is intended, it will not be defeated because not good as a gift *inter vivos*. Norway Savings Bank v. Merriam, 88 Maine, 146, 33 Atlantic, 840; Harris Banking Co. v. Miller, 1, L. R. A. (N. S.) 790, 190 Mo., 640, 89 S. W. 629.

Here the instrument executed by the trustee described with particularity the bond that was delivered to him by the settlor, and declared that it was held in trust   It also sets forth with reasonable certainty the conditions

of the trust. After the death of Johnson, Rapier was to use the interest to keep in good repair the Cemetery of St. Catherine at New Haven. Upon Rapier's death, the bond or its proceeds were to be turned over to the parish priest of St. Catherine's Church, to be used for the same purpose. Manifestly, the instrument is sufficient to declare or create a trust, and having been signed, acknowledged and delivered by the trustee, and thereafter recorded in the manner authorized and required by law, the debt thus arising to the *cestui que* trust is a debt due by the trustee of an express trust created by deed within the meaning of the statute, and is therefore a preferred claim against the assigned estate.

Judgment reversed with directions to enter judgment in conformity with this opinion.