## Osgood's Executrix v. Gleason.

(Decided April 26, 1929.)

D. E. WOOLDRIDGE for appellant.

ROBT. T. CROWE, WILLIAM J. CROWE and JOSEPH E. CONKLING for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee and defendant below, Ethel H. Gleason, owned a home in Pewee Valley, Ky., in which she resided. She was unmarried, and under some arrangements, not disclosed by the record, she took to live with her in her residence Dr. S. C. Osgood and his wife, and the three seem to have occupied it as members of one family. Osgood was a veterinarian, by virtue of which he acquired the title of "Doctor," but he does not appear to have been burdened with practice. Miss Gleason was crippled in one hand and could not operate an automobile, and the doctor was her chauffeur whenever and wherever she wished to drive, and he also used the automobile for his private purposes. On April 16, 1924, defendant bought a Buick automobile from a Louisville dealer, and gave in payment or part payment therefor her check on the Kentucky Title Savings Bank & Trust Company of that city for the sum of $1,000. Perhaps the bill of sale, or the registration certificate for that vehicle, was issued in the name of Dr. Osgood; but all fees and charges as well as repairs to it were paid by Miss Gleason, the doctor appearing to have no property of consequence and clearly shown to have made no payments growing out of using or operating the automobile. Besides taking other trips, it is indisputably shown that Miss Gleason, with the doctor acting as chauffeur, made from three to four trips to Louisville each week, and more frequently than otherwise Mrs. Osgood would go along. In the meantime if either or both of the Osgoods had occasion to use the machine they were at liberty to and did do so.

While so privately using it, and a short while prior to January 6, 1925, there was a collision of the automobile with an electric car, from the results of which the former was seriously impaired. Miss Gleason then purchased another automobile of the same make from the same dealer and paid the difference between the value of the salvage of the old one and the price of the new one of $1,000 by her check issued on the same bank. The bill of sale for the latter machine was issued directly to Miss Gleason, and it was thereafter used in the same manner as was the first one.

Some ten months after its purchase, Miss Gleason, because of some affliction not disclosed by the record, had to enter a hospital for some kind of operation, but before

doing so she made out and signed a bill of sale for the automobile to Dr. Osgood, and he wrote and signed upon the back of it, or upon the new registration certificate that he obtained, these words: "In case of my death this car belongs to Ethel H. Gleason." The bill of sale made to Dr. Osgood by the defendant as above stated was executed on November 27, 1925. The record does not disclose when Miss Gleason left the hospital, but on April 9, 1926, Dr. Osgood suddenly died, leaving a will devising all of his property to his wife, the appellant and defendant below, Maggie Osgood, who was nominated and qualified as executrix of her husband's will. The automobile was housed in the same garage after the death of Dr. Osgood as it had been before. Nineteen days after his death, and to carry out what the proof shows was the actual arrangement between the parties, Miss Gleason made out a bill of sale for the automobile transferring the legal title thereto to herself and signed to it the name of Dr. Osgood, although he was then dead. She later sold the automobile, and this action was filed by Mrs. Osgood as the executrix of her husband's will against defendant to recover for the value of the automobile which plaintiff fixed in her petition at $1,500. The action was filed in equity because it sought to cancel the bill of sale executed by defendant after Dr. Osgood's death, and upon trial after evidence taken the court dismissed the petition, to reverse which plaintiff prosecutes this appeal.

There are a number of questions argued in briefs for both plaintiff and defendant, but none of which according to our view are applicable to the facts of the case and have no relevancy to the determination of the merits of the controversy, and for that reason they will neither be referred to nor discussed in this opinion. The testimony taken and heard upon the trial indisputably shows the facts to be in substance the same as we have stated above, and which is true without considering the deposition of defendant, who because of the death of Dr. Osgood was an incompetent witness, and for that reason her testimony was properly excluded. Under the facts as so developed, Dr. Osgood at most was only a dry trustee of the legal title to the automobile, the beneficial interest remaining in defendant, who entirely paid for it as well as all the expenses of its upkeep and operation, and the only question involved in the case is: Whether the trust may be established by extraneous testimony when the bill

of sale, executed by defendant to Dr. Osgood when the former went to the hospital, is absolute on its face?

Before attempting a determination of that question, it should, perhaps, be stated that the introduction of such proof to create and establish that a vendee or transferee under an absolute conveyance or transfer was merely a trustee for the vendor or transferor, or a third person, does not violate the rule against the introduction of parol proof to vary or alter the terms of a writing absolute on its face. 22 C. J. 1259, 1260, section 1679, and the numerous cases cited in note 1 on the latter page, and also 10 R. C. L. 1039, section 231. The reason for that exception to the rule against the admission of such evidence is that where the instrument transferring the title contains nothing to the contrary and only purports to transfer it to the vendor or transferee, only the legal title is transferred and from which a presumption arises that the beneficial title was also intended to be transferred; but which presumption may be rebutted by evidence of what contemporaneously occurred. Such evidence does not and may not contradict the writing in so far as it transferred the *legal* title, but it is admissible upon the theory that it manifests the purpose for which such transfer of that title was made. It is now too late to question the soundness of that reasoning, since the rule has become thoroughly established in the jurisprudence of this country.

The next question is: May such trust be proven by *parol* testimony when the instrument transferring the legal title is in writing? By the seventh section of the English Statute of Frauds (St. 29 Car. II, c. 3, section 7) it was provided: ''That all declarations or creations of trusts or confidences in lands, tenements, or hereditaments shall be manifested and proved by some writing signed by the party who is by law to declare such trust or by his last will in writing, or else they shall be utterly void and of no effect.'' Many states of the Union have enacted a similar section in their statute of frauds, but we have no corresponding one in our statute. Under such statutes a trust in real estate, collateral to the paper evidencing the absolute title, may not be proven or manifested except by a writing; but before the enactment of such a statute in those jurisdictions a trust in real property could be established by parol proof, and the same seems to be true now in some or all of the jurisdictions that have not enacted it. But, notwithstanding the

statute, a trust could be created by parol proof of contemporaneous facts in *personal* property in those jurisdictions where one had been enacted, which is also true in those jurisdictions having no such statute. The text in the volume of Cyc., supra, page 51, on that subject says: "As the different statutes requiring declarations of trusts to be in writing by their express terms, relate only to trusts in real property, express trusts in personal property may be created by parol." See also the text in 26 R. C. L. 1194, section 30, and on page 1202, section 41. To the same effect is Perry on Trusts (6th Ed.) p. 74, section 79, and notes.

Following the above principles, this court in the comparatively recent case of Rudd v. Gates, 191 Ky. 456, 230 S. W. 906, held that it was competent to prove by parol testimony that a devise of land absolute on its face was subject to a trust in which the named devisee was the trustee for the beneficiaries of the trust, and which holding was necessarily based upon the fact that we have no statute in this jurisdiction requiring such trust to be manifested by a writing. Other cases are cited in that opinion, some of which relate to the creation of trust in personalty. But we are not concerned in this case as to the principle announced in the Rudd case with reference to creating by parol testimony of a trust in real estate contrary to the absolute terms of the conveyance, since the property involved in this case is personalty, and prior to the Rudd opinion we held in the cases of Holbrook v. Fyffe, 164 Ky. 435, 175 S. W. 977; Graham's Adm'r v. English, 160 Ky. 375, 169 S. W. 836; Marshall's Adm'r v. Marshall, 156 Ky. 20, 160 S. W. 775, 51 L. R. A. (N. S.) 1208; Brown v. Brown's Adm'r, 129 Ky. 139, 110 S. W. 831, 33 Ky. Law Rep. 601; Crews v. Crews' Adm'r, 113 Ky. 152, 67 S. W. 276, 23 Ky. Law Rep. 2374; Krankel's Ex'x v. Krankel, 104 Ky. 745, 47 S. W. 1084, 20 Ky. Law Rep. 901; Roche v. George's Ex'r, 93 Ky. 609, 20 S. W. 1039, 14 Ky. Law Rep. 584; Williamson v. Yager, 91 Ky. 282, 15 S. W. 660, 13 Ky. Law Rep. 273, 34 Am. St. Rep. 184, and Barkley v. Lane's Ex'r, 6 Bush, 587, and others referred to in those opinions, that, "A trust in personal property may be created by parol and proved by parol evidence."

In this case it was uncontradictedly shown that Dr. Osgood paid nothing towards the purchase or upkeep of the involved automobile, and that its transfer to him by

the bill of sale, executed by defendant when she was about to enter the hospital, was for only a specific purpose and whereby he was conveyed only the legal title thereto for the purpose proven by the parol testimony, and that it was never the intention of defendant to transfer to him the present *beneficial* interest in the automobile along with its legal title that the bill of sale on its face transferred. He was thereby made the holder of the title without beneficial interest, the latter of which was to be in defendant who had bought and paid for the automobile and furnished all expenses for its operation and upkeep. Being only a dry trust for no fixed period, and all interested parties being sui juris, it could be terminated at any time by the beneficial owner who created it (Blackburn v. Blackburn, 167 Ky. 113, 180 S. W. 48), and defendant incurred no legal liability to the estate of Dr. Osgood by selling the automobile and thereby converting it to her own use.

Wherefore the judgment is affirmed.