## DeLeuil's Executors et al. v. DeLeuil.

(Decided June 22, 1934.)

WILLIAM FURLONG, FURLONG & WOODBURY, SELLIGMAN, SELLIGMAN & GOLDSMITH, and JOSEPH B. EVERHART for appellants.

BLAKEY, DAVIS & LEWIS and HERBERT K. BOEHL for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The suit is to determine whether a valid trust in certain securities was established or whether they are to be regarded as passing under the will of the alleged settlor.

Frank R. DeLeuil died December 27, 1930, survived by his widow and three children by a former marriage, a daughter and two sons. In July, 1926, about a year after his second marriage, DeLeuil, by a formal writing, placed with the Lincoln Bank & Trust Company a policy of insurance for $5,000 on his life, to be held in trust for the maintenance and care of his daughter, Florence N. DeLeuil, who was then under 21 years of age and in poor health, physically and mentally. The terms of the instrument are not material to this case except the provision, "The party of the first part [De-Leuil] reserves the right to add to the corpus of the

trust hereby created to be held according to the terms thereof.'' No other property was ever specifically placed with the trustee under this trust agreement. But two years later DeLeuil explained to the president of the bank that he was creating an estate for his daughter for her future care and hoped to add to it gradually. He stated she was unable to transact any business and during his lifetime he would have to look after her and he wanted arrangements made for her provision after his death. He emphasized that he wanted to handle the estate during his lifetime and did not want her to know anything about it. At that time, on July 5, 1928, he rented a safety box at the bank in the name of ''Miss Florence N. DeLeuil by F. R. DeLeuil, agent, 147 N. Clay Street.'' The rent on the box was paid for three years in advance. The address given was DeLeuil's business address. Pursuant to his instructions the bank's records were indorsed, ''Notices to be sent to F. R. DeLeuil''; and further, ''Florence N. DeLeuil is not to know that this box is in her name.'' From time to time DeLeuil purchased real estate bonds and placed them in this box. He had the sales memoranda made for ''Florence N. DeLeuil, by F. R. DeLeuil.'' To the officers of the bank from whom he bought the bonds he stated that he intended to give the securities in the box to his daughter; that they were to be a surprise for her and were to be for her use later on in life. From time to time he impressed on the bank's employees that they should not let any one know about it. An employee of the bank, in waiting upon Mr. DeLeuil upon several occasions, caught a passing glimpse of the contents of the box and saw that it contained certificates of stock of the Struck Construction Company. He also had another safety box at the bank in his own name. So far as the record discloses no one other than he and the bank officers ever knew anything about this box rented in the name of the daughter.

A few days after DeLeuil's death, his will was probated and on the same day the keys to this safety box were found by representatives of the executor in his private desk at the office of the Struck Construction Company, of which he was president and a large stockholder. It was attached to a shipping tag on which was written in his own hand:

''Miss Florence DeLeuil: in case of my death

take this key to Mr. Rush at Lincoln Bank & Trust Co., it is for your private box. Do not let anyone know what is in the box except the bank officials. Give all to them to add to your trust fund.

"Your loving Dad

"[Signed]   F. R. DeLeuil."

In the box was $50 in currency, $800 par value real estate bonds, and 95 shares of stock in the Struck Construction Company issued in DeLeuil's name (before he rented the box) and without any indorsement on the certificates. Of the bonds, $300 were the daughter's personally, the bank having acquired them as her guardian during her minority and delivered them to her or her father when settlement was made. The certificates of stock were contained in an envelope marked in DeLeuil's handwriting, "Personal property of Florence N. DeLeuil." They had been issued to him before the written trust instrument and the rental of the box. The dividends on this stock had been collected by DeLeuil at all times. The master commissioner reported its value to be $24,500.

As having some bearing upon DeLeuil's intention, it is to be noted that his entire net estate was by his will placed in trust, with 50 per cent. of the income payable to his widow, 40 per cent. to his daughter, the balance to his two sons. The widow has seasonably renounced the will and elected to take her statutory share in the estate. It is to be further noted that in August, 1925, which was shortly after his marriage, DeLeuil gave to his wife 30 shares of preferred stock in his company, and in September, 1928, he gave her 4 shares of its common stock. The certificates were at the time indorsed and delivered to her, but at his request the stock was carried in his name on the books of the company. The dividends were paid to him and he in turn paid them over to his wife in recognition of her ownership.

In short, we have a case where a complete and formal trust first was established with an expression in the deed of trust indicating a purpose to add to the estate, but without any property in addition ever being specifically delivered to the trustee. Then we have emphatic and deliberate statements that the settlor was creating another estate for the same beneficiary in the

renting by him of a safety box in her name, by himself as her agent, and from time to time placing therein securities, a part of which he bought in the same capacity of a self-appointed and self-styled agent. When he died, those securities were in there and also the stock declared by him, through indorsement on the envelope containing them, to be the beneficiary's property. In there also were $300 in bonds which were her own separate personal property. Finally, the key to the box was identified by him as being to the box of the beneficiary and with specific directions that she should deliver the contents to the president of the institution named as her trustee in the formal deed of trust to be added to that estate.

There is no contention that this constituted a gift inter vivos. The question is whether the securities are a part of DeLeuil's estate passing under his will, or under the writing on the shipping tag as a codicil (so that the widow by her renunciation is entitled to one-half under the statutes), or whether there was only an attempt to create a trust in futuro or a valid trust was created. The chancellor concluded (1) the decedent intended to create a trust for his daughter, with himself as trustee during his lifetime, of such securities as he placed in the safety box; (2) the securities became impressed with the trust when they came into the box; (3) under the terms of the trust he received the income for himself during his lifetime, and also reserved the right of revocation or modification by subtracting or adding to the trust property; (4) the trust property was identifiable by existing facts and the ultimate subject-matter of the trust consisted of securities, as to which he did not revoke the trust by removal from the box; (5) the retention of the income and the reserved powers over the securities did not indicate an intention only to create a testamentary trust; (6) the directions on the tag to which the keys were attached were designed to secure a successor of himself as trustee when he died by adding the securities to another inter vivos trust of which it was already trustee; and (7) the contents of the box were not a part of decedent's individual estate.

One voluntarily and without valuable consideration can completely divest himself of legal ownership of property without an actual transfer of the legal title by creating a valid trust and constituting himself as trustee for the beneficial owner. A trust will arise as

the result of a manifestation of an intention to create it. That intention and purpose may be manifested by explicit declarations or other acts and words. Other elements being present, the donor assumes such duties as are enforceable in equity. Perry on Trusts, sec. 96; Tentative Draft of the Restatement of the Law on Trusts by the American Law Institute, secs. 27, 28, 33, 36, and 39; 26 R. C. L. 1180; Roche v. George's Ex'r, 93 Ky. 609, 20 S. W. 1039, 14 Ky. Law Rep. 584; Ginn's Adm'x v. Ginn's Adm'r, 236 Ky. 217, 32 S. W. (2d) 971.

That the decedent in the case at bar did have and did manifest that intention to create during his lifetime a trust for his daughter in addition to that established by the formal writing is clear and unmistakable. Granting the existence of that indispensable element of intent, the trust would be incomplete unless executed or effectuated. That may be done and property may be thus brought within the trust by a declaration of the settlor that he holds it as property for the other person or by a transfer of it inter vivos to a third person to hold in trust. Perry on Trusts, sec. 96; Tentative Draft of the Restatement of the Law on Trusts by the American Law Institute, secs. 27, 33, and 36; 26 R. C. L. 1185, 1192; Martin v. Funk, 75 N. Y. 134, 31 Am. Rep. 446; Reynolds v. Thompson, 161 Ky. 772, 171 S. W. 379; Ginn's Adm'x v. Ginn's Adm'r, supra.

While the creation of the trust was altogether secret in so far as the beneficiary was concerned, its creation and existence were communicated to the officers of the bank from time to time. As is pointed out in section 96, Perry on Trusts, the authorities are not altogether in accord as to the necessity of communicating the establishment of a trust to the beneficiary or another in order to pass effectually a beneficial interest in the property. We may adopt this statement of the law on this point from the opinion of the chancellor:

"A line of cases, starting in 1811, when Ex parte Pye [18 Veset 140] was decided by Lord Eldon, have progressively settled that the owner of property can make himself a trustee of it for another by conduct alone, without words, without a writing, without a delivery of the property, without receiving consideration, without that other being apprised of the creation of the trust in his behalf, without the owner's knowing that what he was

creating was called a trust, and without his making any communication to any other person."

In support of that statement he cites sections 36, 39 of the Tentative Draft of the Restatement of the Law on Trusts by the American Law Institute, supra; Perry on Trusts, sec. 96; Lewin on Trusts, sec. 71; Pomeroy's Equity, sec. 996; Southerland v. Southerland's Adm'r, 68 Ky. (5 Bush) 591; Barkley v. Lane's Executor, 69 Ky. (6 Bush) 587; Barton v. Barton, 80 Ky. 212; Williamson v. Yager, 91 Ky. 286, 15 S. W. 660, 13 Ky. Law Rep. 273, 34 Am. St. Rep. 184; Krankel's Executrix v. Krankel, 104 Ky. 745, 47 S. W. 1084, 20 Ky. Law Rep. 901. In the comment under section 37 of the Tentative Draft of the Restatement of the Law on Trusts by the American Law Institute, it is said:

"The intention to create a trust may be sufficiently manifested without a communication of the intention to any person and without handing to any person any instrument evidencing the intention to create a trust. It is essential to the creation of a trust that the settlor should manifest by some external expression his final and definite intention that a trust should arise. The failure of the settlor to communicate his intention to any one or to hand to any one an instrument which he has drawn up declaring his intention, is evidence, but it is not conclusive, that he does not have a final and definite intention to create a trust.

"If a person declares himself trustee of property, his failure to notify the beneficiary is some evidence that he does not intend immediately to create a trust [see Section 47, Comment b]; and it may be evidence that although a trust is created he reserves a power to revoke the trust."

See, also, 26 R. C. L. 1190; Marshall's Adm'r v. Marshall, 156 Ky. 20, 160 S. W. 775, 51 L. R. A. (N. S.) 1208; Ginn's Adm'x v. Ginn's Adm'r, supra.

Another condition to be considered is the identity of the subject-matter at the time of the creation of the trust. The property must then have been in existence and its identity definite so that it could be ascertained as to just what was set aside. The donor could not create a trust in property which he intended in the future to purchase and put in the box. Sections 34 and

72 of the Tentative Draft of the Restatement of the Law on Trusts by the American Law Institute; 26 R. C. L. 1183; 65 C. J. 235, 271.

The chancellor was of the opinion that when the father placed the securities or any of them in the safety box, his act in so doing was a sufficient manifestation of intent on his part then and there to declare himself a trustee of that particular property for his daughter. He also thought that the existence of a power of removal and right of revocation was not conclusive that the decedent did not intend the trust to apply to those securities which he might substitute and leave therein. We are of the same opinion. St. Catherine's Cemetery v. Fidelity Trust Co., 152 Ky. 797, 154 S. W. 29; Siter v. Hall, 220 Ky. 43, 294 S. W. 767; Annotations, 73 A. L. R. 209. The placing and leaving of a particular security in the box was an external expression or a declaratory act.

Nor can it be successfully maintained that the reservation of the income from the property placed in the box during the creator's lifetime is conclusive of a purpose to create only a testamentary trust. Such reservation is not inconsistent with the establishment of a trust and will not make it testamentary in character. St. Catherine's Cemetery v. Fidelity Trust Co., supra; Lee v. Belknap, 163 Ky. 418, 173 S. W. 1129; Marshall's Adm'r v. Marshall, supra; 26 R. C. L. 1206; Perry on Trusts, sec. 97. It is perhaps evidence tending in that direction, but it must not be overlooked that the donor had explicitly declared that he intended what he put in the box for his daughter; that the bonds were bought in her name by him as her agent; that he was careful to name his daughter as the lessee of the safety box containing them with himself as her agent; that stock certificates like those found therein when he died were seen by a third party in the box during this period; that he had earmarked them as being the property of his daughter; and that he had previously given some similar stock to his wife but retained the recorded title in his own name. He explicitly declared that because of her incapacity he would handle the trust himself during his lifetime, and when he died, in effect, he nominated his successor trustee, for we construe the writing on the shipping tag as simply being to inform the beneficiary as to what had already been done for her and to direct

her to deliver the property to the Lincoln Bank & Trust Company as his successor trustee. On this point the case is resolved into a matter of weighing the evidence. We think that the evidence of a present creation overwhelmingly outweighs the presumption of a contemplated trust or the future creation of a trust arising from the retained powers of control. Section 64 (1) of the Tentative Draft of the Restatement of the Law on Trusts by the American Law Institute thus presents the law:

"If by the terms of the trust an interest passes to the beneficiary during the life of the settlor, the trust is not testamentary merely because the settlor reserves a beneficial life estate nor because he reserves in addition a power to revoke the trust in whole or in part and a power to modify the trust."

The case of Estate of Thomas Smith, 144 Pa. 428, 22 A. 916, 27 Am. St. Rep. 641, presented facts having some similarity, although not quite as positive in effect as those at bar, and a trust was held to have been created. See, also, Roche v. George's Ex'r, supra.

We have given full consideration to the excellent brief of counsel for appellant. Without specifically referring to the authorities relied upon, it would seem sufficient to say they involved gifts inter vivos or, in respect of an effort to establish a trust, there was missing one or more necessary constituent elements. Perhaps some of the foreign cases may be said to sustain appellant's contentions, but they do not seem to be in accord with the general run of authorities. We have no difficulty in concluding that a valid trust was created for the benefit of the appellee.

Wherefore the judgment is affirmed.