ROSSELOTT, APPELLEE, *v.* ROSSELOTT, APPELLANT.

(No. 7535—Decided October 13, 1952.)

*Messrs. Dolle, O'Donnell & Cash* and *Mr. John Hahn,* for appellee.

*Messrs. Cors, Scherer, Hair & Hardsock* and *Mr. Louis J. Schneider, Jr.,* for appellant.

MATTHEWS, J.  This is an appeal on questions of law and fact from a judgment declaring the defendant a trustee of the proceeds of a certain insurance policy issued by the Columbus Mutual Life Insurance Company and directing him to hold such proceeds in a

separate account as trustee and use the fund to defray the expense of a college education of his son—the plaintiff in this action. By agreement of the parties, the case was heard in this court on the evidence adduced in the trial court.

On July 20, 1936, the defendant made application to the Columbus Mutual Life Insurance Company for this policy for $2,000. The policy was described in the application as an "Educational endowment at age 18" policy. The defendant was named as the original beneficiary and Mae Rosselott, his wife at that time, was designated as the "contingent beneficiary." It was on this application that the policy was issued on July 29, 1936. The application was attached to the policy upon which was endorsed the legend "Childs educational endowment at 18."

The policy recites that the Columbus Mutual Life Insurance Company "insures the life of John Dale Rosselott and agrees to pay two thousand dollars to Millard C. Rosselott, father of the insured, if living, otherwise to Mae Rosselott, mother of the insured, in four annual installments of five hundred and 00/100 dollars each, the first installment being due on the 29th day of July, 1950, and the subsequent installments annually thereafter, provided the insured, for whose education this is intended is alive on the aforesaid date and this policy is then in full force."

The policy contains a provision that should the insured die before July 29, 1950, the insurer would pay to the beneficiary $1,520 if death occurred during the first year and $1,900 if death occurred thereafter during the term of the policy.

The policy also contained a provision that the death of the beneficiary would terminate the obligation to pay premiums to keep it in force.

By the terms of the policy the beneficiary was given the right during the lifetime of the insured to the cash

surrender value of the policy, as well as the right to its loan value and also all dividends declared by the insurer on the policy.

The stipulated premium was $143.95 annually until 14 payments had been made or until the death of the insured.

The policy contained no provision for a change of the original beneficiary—the defendant—but did vest in him the right to change the contingent beneficiary. The provisions to this effect were followed by the provision that "if there be no designated original or contingent beneficiary surviving all interest in the policy shall vest in the insured or his estate."

The foregoing are all the provisions of the policy that have any bearing upon the issue in this case. A reading of the policy discloses that all the rights, options and privileges arising during the term of the policy were vested in the original beneficiary, the defendant in this action, during his lifetime. He is given complete control over it. He could terminate it at will and appropriate to his own personal use its entire value. The policy was issued on his application and purports to be a contract between him and the insurer and no one else. The insured—plaintiff herein—was given no control over or rights of any sort in the policy or its cash loan or cash surrender value during the term of the policy. As long as there was either an original or contingent beneficiary in being, the insured was given no right whatever against the insurer. It was only in the event of the nonexistence of both the original and contingent beneficiaries that the insured was given the right to the benefits created by the policy.

The testimony discloses that the defendant obtained a similar policy upon the life of an older son and that upon its maturity the insurer paid the proceeds by check to the defendant and that he endorsed the check

to the mother of their two sons. The evidence is conflicting as to whether this identical money was used to defray the expenses of the college education of the older son. He did receive a college education. The evidence shows that the defendant and Mae Rosselott were divorced prior to the maturity of the policy. By a separation agreement approved by the court the care, custody, control and education of the plaintiff was awarded to his mother, Mae Rosselott, and their property was divided in such a way that Mae Rosselott's share was variously valued by the parties at from $50,000 to $125,000. No mention was made of this insurance policy or the one upon the older son's life, although other policies were mentioned in the agreement of separation.

There was evidence that before this family relation was dissolved, on various occasions when their sons made requests which the parents regarded as beyond their means to grant, they cited these insurance policies to their sons as a reason for their inability to gratify their immediate desires.

We think the foregoing is a correct summary of the evidence in this case. It seems to us that the evidence extraneous of this policy has very little, if any, probative value and leaves the case to be determined by a consideration of the terms of the policy alone. Does it give to this plaintiff a vested right in the proceeds?

The application for this insurance was made by the defendant. He was the offeror. The insurer was the offeree. They were the parties to the contract of insurance. The plaintiff was in no sense a party to that contract. It was not necessary that he should be. The defendant, as the plaintiff's father, had an insurable interest in his life and could and did take out this insurance without plaintiff's consent. As the insured, he incurred no obligations and clearly is entitled to no benefits as long as there exists an original or con-

tingent beneficiary, unless the recital in the policy that the insurance was intended for his education overrides the many provisions of the policy giving the defendant the absolute control during the running of the term with power of life and death over its obligation, and at the end of the term the right to receive payment from the insurer. We do not think the mere expression of an intention to apply the proceeds to the education of the plaintiff has any such controlling effect. To so hold would require us to conclude that it was the purpose of the defendant to reserve to himself the absolute power over this policy and its proceeds during the term of the policy and then instantly upon the ending of the term to strip himself of all power.

To "intend" means, as defined by Webster "To take or regard in a certain mode or sense; to apprehend, understand or conceive;—To have in mind as a design or purpose." There is nothing in the definition to indicate irrevocability—just the contrary.

And when it is considered that it is sought to establish a binding gratuity against the father in favor of the son, it would seem reasonable to require that the language should be clear and convincing to that end. Our research has convinced us that such is the law. *Woods* v. *Fifth Third Union Trust Co., Exr.*, 54 Ohio App., 303, 6 N. E. (2d), 987.

It is sought to support the plaintiff's claim on the theory that the defendant declared himself a trustee in favor of the plaintiff. We find nothing in the record that justifies such a conclusion. To constitute a declaration of trust, the language must relate to the present. Language expressing future purposes, plans, designs or intentions are inappropriate to create a trust. This is the rule stated by Scott on Trusts, and we know of no conflict on the subject.

We shall consider the cases relied upon by plaintiff's counsel.

The first is *Norris* v. *Norris* (Ohio App.), 57 N. E. (2d), 254. The first distinction between that case and the case at bar is that in *Norris* v. *Norris* the court was not considering a gratuitous declaration. The action was between a divorced couple. The wife had entrusted her property to her husband. It was admitted that the husband became obligated to her thereby. The only dispute was whether a debt or a trust had been created. The court found that the husband had agreed to keep the wife's property as a separate fund which was inconsistent with the idea of a debt and consistent with the idea of a trust, and so held. The case certainly does not require a holding that a trust is created by a declaration by one starting to create a fund by using his own money which is intended for a certain purpose.

Counsel rely also on *DeLeuil's Exrs.* v. *DeLeuil*, 255 Ky., 406, 74 S. W. (2d), 474. The facts in that case are involved and it would extend this opinion unduly to consider them in detail, but they show an unmistakable intent to constitute the declarant a trustee of specifically identified property immediately. All his words and actions indicated that he intended to become bound at once as a trustee to hold the property for the beneficiary.

*Flanders* v. *Blandy*, 45 Ohio St., 108, 12 N. E., 321, sheds much light upon the principles that should govern in the decision of this case. In that case a father set apart certain United States bonds as a gift to his daughter, but he never delivered them to her. Later he wrote his daughter that he had invested the proceeds of the bonds in a certain business and that if she did not want that investment he would pay her the face value of the bonds and enclosed his written promise to that effect, which the daughter accepted and retained. After the father's death, the daughter filed suit on this promise. The court discussed the

subject of gifts and trusts, and held that, as no gift was effected because of a failure to deliver the bonds to the donee and as no trust was intended, the promise of the father was without consideration and unenforceable.

At pages 116 and 117 the court says:

"It is obvious and well settled by authority that before the owner can be held as a trustee for the benefit of a mere volunteer, there must be a distinct, perfect and unequivocal declaration of trust. There should be an expression of an intention to become a trustee, not that the owner should use technical words or language, but he should declare in unmistakable terms that he means to stand in a fiduciary relation to the object of his bounty."

We find no such unmistakable language in this policy.

For these reasons, the court finds for the defendant.

*Judgment for defendant.*

HILDEBRANT, P. J., concurs.