## Drake v. The Security Trust Company

(Decided June 13, 1924.)

## Appeal from Fayette Circuit Court.

1. Witnesses—Divorced Wife Could Not Testify to Request of Decedent to Third Party to Give Her Certain Sum.—Divorced wife could not testify as to request of decedent, two days before his death, to a third party, to give divorced wife $3,000.00, she being a claimant against estate, who could not testify against decedent, under Civil Code of Practice, section 606, subd. 2.

2. Gifts—"Gift Inter Vivos" Cannot be Revoked, if Completed.—A "gift inter vivos" is made by donor at time when he has no belief that his death is impending, and, when completed, such a gift is irrevocable.

3. Gifts—"Gift Causa Mortis" May be Revoked—Must be Executed.—A "gift causa mortis" is made with belief by donor that death is imminent, and, although completed by delivery, may be revoked by donor at any time during his life, or, if not completed during life, may not thereafter be completed for him by any one.

4. Gifts—Gift Inter Vivos Requires Delivery.—Gift inter vivos does not pass title, unless accompanied with delivery, either actual, constructive, or symbolic.

5. Gifts—Delivery Necessary to Gift Causa Mortis.—It is essential to a gift causa mortis that there be delivery, either actual, constructive, or symbolic, during lifetime of donor.

6. Wills—Gift Contemplating Delivery After Death Testamentary.—A gift contemplating completion by delivery after death is necessarily testamentary in its nature.

7. Wills—Direction on Deathbed Held Testamentary in Nature.—Direction on deathbed to brother to give a certain person $3,000.00 held testamentary in nature, and not intended to be acted on until death, and hence unenforceable.

8. Wills—Valid Will Must be in Writing.—Under Ky. Stats., section 4828, a valid will must be in writing, with name of testator subscribed thereto, and an attempted oral bequest is invalid, except in case of soldiers and mariners, under section 4830.

9. Executors and Administrators—Transactions Between those in Extremis and Claimant Against Estate Scrutinized with Care.—Transactions between those in extremis or facing impending death and those presenting claims against estate of a decedent, based on

occurrences immediately preceding death, are scrutinized with great care.

10. Trust—Parol Trust Held Not Created.—No parol trust was created, where person on deathbed directed brother to pay $3,000.00 to a certain person, though brother was managing farm of person dying.

W. C. G. HOBBS for appellant.

HUNT, NORTHCUTT & BUSH and GEORGE HUNT MITCHELL for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

Appellant was married to W. D. Drake in 1898. They lived together until 1916, when they were divorced.

One child, a daughter, was born to them in 1902, and by the judgment of divorce her custody was given to each of them for part of the time. He continued to live on his farm a few miles from Lexington, while his wife thereafter lived in the city. When the child was at the mother's home he frequently went there, and the relations between the former husband and wife appeared to be friendly.

His health became bad, and in August, 1921, he went to the home of his former wife and remained there until his death on the 4th of November that year. During this period he received from her the kindliest attention and the most careful nursing.

He had a brother, F. P. Drake, who, during his said illness, had been looking after his farm for him, and possibly attending to some other business. On the second day before his death, while his brother and former wife were present, he said to the brother, in the presence of the wife, "Take care of sister's $6,000.00 and give Maggie Belle $3,000.00."

The $6,000.00 for his sister had reference to a bequest of that amount which he had made to his sister in a will theretofore executed by him, and wherein his brother, F. P. Drake, was nominated as executor; but in that instrument there was no bequest or devise to his former wife, Maggie Belle, of $3,000.00, or any other sum or thing.

After his death, the brother, F. P. Drake, declined to qualify as executor, and the appellee trust company qualified as administrator with the will annexed, and as trustee under the will.

This is an equitable action by her against such administrator in which she seeks a judgment for the $3,000.00, either upon the ground that it was a gift *causa mortis,* or that the transaction created the relationship of trustee and *cestui qui trust* between F. P. Drake and the plaintiff, in as much as F. P. Drake was at the time the agent of decedent, and the nominated executor in his will.

Decedent at the time of his death and this conversation was the owner of 348 acres of improved blue grass land, several thousand dollars' worth of personal property, in addition to having to his credit in a Lexington bank something more than $5,000.00. There was, however, no actual delivery to the brother either of money or specific personal property, nor was there any direction to apply to the payment of this so-called gift $3,000.00 of the money on deposit, or to apply any specific personal property to its payment. No steps were taken by the brother during decedent's lifetime to carry out this request, and after his death his personal representative having declined to pay the claim this action was brought. The lower court dismissed the plaintiff's petition, and this appeal results.

The quotation above as to the statement of decedent two days before his death is from the deposition of F. P. Drake. Appellant also testified as to that conversation, giving in substance the same language, but exceptions were properly sustained to her deposition upon the ground that she being a claimant against the estate of the decedent could not, under the provisions of subsection 2 of section 606, Civil Code, testify against the decedent. Hale v. Hale, 189 Ky. 171. Manifestly this ruling was proper, but as the evidence of the brother was competent it becomes wholly unimportant.

Clearly the attempted gift, if valid, was made in contemplation of imminent death, and was, therefore, if the donor intended it to be a completed transaction during his life, a gift *causa mortis* as distinguished from a gift *inter vivos.* A gift *inter vivos* is made by the donor at a time when he has no belief that his death is impending, and when completed such a gift is irrevocable; while a gift *causa mortis* is made with the belief by the donor that his death is imminent, and although completed by the delivery of the thing donated, yet it may be revoked by him at any time during his life, or if not completed during

his life may not thereafter be completed for him by any one.

But whether the gift be one *inter vivos* or *causa mortis,* to be valid and pass title to the thing donated it must be accompanied with a delivery of that thing, either actual, constructive or symbolic; and if the transaction is not completed by such delivery during the lifetime of the donor, thereafter it cannot be completed for him by any one, for if he contemplates such completion after his death the transaction is necessarily testamentary in its nature.   A gift, whether *inter vivos* or *causa mortis,* if completed must take place during the life of the donor, while the testamentary disposition of property necessarily takes effect only after the death of the testator.

It will be observed that W. D. Drake in the directions which he gave his brother linked the attempted gift or devise to his wife, which was not a part of his will theretofore written, with a devise specifically made in that will to his sister for a specific sum of money.   It is therefore reasonably apparent that he did not expect that expressed wish as to his wife to be carried out during his lifetime any more than he expected the devise theretofore made to his sister to be carried out until after his death.   He did not at the time direct his brother to draw a check on his deposit in bank to cover the $3,000.00; he gave his brother no authority to sell or dispose of any of his property and pay that sum to his wife; he did not direct his brother to turn over to his wife any specific property in payment of that sum, but he only said:

"Take care of sister's $6,000.00, and give Maggie Belle $3,000.00."

He knew at the time the $6,000.00 devise to his sister was provided for in his will, and he knew that devise would not become effective until his death, and could not be taken care of by his brother until thereafter; and it is therefore clear from the language used in the attempted provision for his wife, and from the connection in which it was used, that he never intended his brother to pay the $3,000.00 to his former wife except after his death, and at the same time he was to take care of the devise to the sister.

From the language used, and the connection in which it was used, we are convinced it was in the nature of an attempted testamentary disposition—a thing to take place after his death—and that it was not his purpose to

complete a gift or pass title to the money during his lifetime. If that had been his purpose, he realizing his impending dissolution would have then and there directed his brother either to pay it out of the cash in bank, or by transferring to his wife the possession of some of his personal property to cover the gift.

Under our statute, however, a valid will must be in writing with the name of the testator subscribed thereto, either by himself or some one for him in his presence (section 4828); and it is evident therefore that this attempted oral bequest to take effect after his death was wholly invalid and unenforceable. The only exception under our statute to the requirement that a will shall be in writing and subscribed by the testator, is contained in section 4830, wherein it is provided that a soldier in actual service, or a mariner at sea, may dispose of personal estate by an unwritten will in the manner therein prescribed.

If it be assumed that W. D. Drake intended to make a gift *causa mortis* to his former wife of $3,000.00 in consideration of her care and attention during his last illness, still it is clear that no such gift was completed. One essential to the completion of a gift *causa mortis* or *inter vivos* is that the possession of the thing given must accompany the words of gift so as to pass title. To be sure that possession may be only constructive or as has been said only symbolical; but something must then take place which places the control of the gift or something representing the gift in the donee or some one for his benefit. Here no money passed and no specific property or chose in action was delivered, assigned or transferred either to the donee or the brother. There was not even a direction to turn over to the donee any specific thing or to give to her the money out of any certain fund.

The policy of the law is to scrutinize with great care transactions between those *in extremis* or facing impending death, and those who present claims in any form against his estate thereafter based upon occurrences immediately preceding his death.

Therefore as neither the money which was the subject of the attempted gift, nor any property representing that money changed possession during his lifetime, there was no completed gift *causa mortis* and the title to no property passed. There was neither actual, constructive or symbolical delivery of any property, or anything

that represented property. Stark v. Kelley, 132 Ky. 376; Meriwether v. Morrison, 78 Ky. 576; Taylor v. Purdy, 151 Ky. 82; Moore v. Shifflett, 187 Ky. 7; Hale v. Hale, 189 Ky. 171.

Nor can the transaction be upheld as a parol trust. The courts will recognize the existence of parol trusts in personal property, and will enforce them, but before there can be such enforcement the trust must be in existence. In the first place the title to no property passed which could have been the subject matter of the trust, and it would be futile to say the trust was created when there was no trust property. In the case of Roche v. George's Exor., 93 Ky. 609, a parol trust was enforced. But there not only was a trustee named and specific directions given to him, but a specific note for $2,500.00 was the subject matter of the trust.

Again in the case of Barclay v. Lane's Exor., 6 Bush 587, a similar trust was upheld. In that case there was a transfer in writing of a note for $1,000.00 for a designated purpose, and the subject matter of the trust was plainly identified.

In Sutherland v. Sutherland, 5 Bush 591, the actual possession and legal title to a note was in one man, and the beneficial title in another. The holder of the beneficial title told the one in possession on his deathbed that he wanted the note given to his wife, and thereafter the holder of the legal title assigned the note to the wife, and this transaction was upheld as a gift *causa mortis* by the beneficiary to his wife.

Manifestly the parties were there dealing with specific personal property.

The same rule has been upheld under varying states of fact in the cases of Williamson v. Yager, 91 Ky. 284; Krankel's Exor. v. Krankel, 104 Ky. 745; Marshall's Admr. v. Marshall, 156 Ky. 20; Graham's Admr. v. English, 160 Ky. 376.

In the last named case this court in quoting from the case of Barclay v. Lane, 6 Bush 587, said:

"But the authorities all agree that to fasten a trust on property by mere parol declaration the language used must be clear and explicit, manifesting the owner's purpose to transfer the right, and pointing out with certainty both the subject of the trust and the person who is to take the beneficial interest."

This court in the case of Brown v. Brown, 129 Ky. 138, said in dealing with a similar question:

"The subject matter of the trust must be clearly ascertained, as well as the purposes of the trust and the persons who are to take the beneficial interests."

We see no ground upon which the transaction involved could be enforced.

Judgment affirmed.