## Siter, et al. v. Hall, et al.

(Decided April 27, 1927.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Gifts.—Unless properly executed as a willl, an attempted gift to take effect at death of the donor, who in the meantime retains full ownership and control, passes no right or title to the donee.

2. Gifts.—A gift whereby the donor alienates his property in such way as to lose unfettered control and the power of subsequent disposition will take effect, even though its enjoyment is postponed until the donor's death.

3. Trusts.—A trust may be created for a fixed period.

4. Trusts.—Future earnings are the subject of a trust.

5. Trusts.—A grantor may name himself as a cestui que trust or as one of several cestui que trustents.

6. Trusts.—A grantor may reserve the power of revocation or of changing the terms of a trust, though he cannot make such changes, in absence of a reservation.

7. Trusts.—A grantor may reserve power to change the beneficiaries of a trust created by him.

8. Trusts.—The fundamental element of a "trust" is that the trust property, so long as the trust lasts, be irrevocably devoted to the benefit of certain specified persons called cestui que trustents.

9. Trusts.—Stock purchasing plan, whereby employe alienated part of earnings, together with a bonus contributed by the employer for fixed period to trustees to invest in stock, subject to agreement forbidding assignment and to a qualified right of revocation, held to constitute a valid trust primarily for employe's benefit.

10. Trusts.—In plan for purchasing stock with employe's earnings, creating trust for his benefit, a provision that on death stock should be delivered to beneficiary named by him or to his estate constituted in employe as settlor a reservation of power, as dis-

tinguished from an attempted conferring of power, to appoint additional beneficiaries.

11. **Wills.**—Under stock purchasing plan of employer and employe, creating trust for employe's benefit, and reserving to him right to appoint additional beneficiaries, employe's written stipulation, naming beneficiary, held valid, though not executed as a will.

12. **Trusts.**—Under trust created for employe's benefit, reserving to employe right to appoint additional beneficiaries, but not authorizing a change in those once named, the appointment of the "beneficiaries" in a life insurance policy would not fix the trust for the benefit of the then beneficiaries of the policy, but a subsequent change in identity of policy beneficiaries would effect corresponding change under the trust.

13. **Insurance.**—Under industrial form of group insurance carried by employer for benefit of employe's dependents, classified according to preference plan, naming children as preferred class, and restricting the employe's right to change beneficiaries, and employe's attempt to name one child as beneficiary to exclusion of others held void.

14. **Trusts.**—Permitting one who was named by a void instrument as substituted beneficiary in a life insurance policy to collect the insurance money would not affect the rights of the true beneficiaries, under a trust which designated as cestui que trustents the "beneficiaries" under the policy.

A. J. CARROLL and H. E. McELWAIN, JR., for appellant Mrs. Siter.

IRVIN MARCUS for appellant Allison Collings.

TRABUE, DOOLAN, HELM & HELM and HUMPHREY, CRAWFORD & MIDDLETON for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Crittenden T. Collings was president of the Standard Oil Company of Kentucky for 20 years, and chairman of its board of directors during the last 4 years of his life. As an executive Mr. Collings took a deep interest in the employes of the company, and desired them to adopt habits of economy and thrift, and to lay aside something for their declining years. He also believed that they would best serve the company by becoming shareholders and directly interested in its success, and that this would produce amity and good will between them. In order to effectuate these purposes, Mr. Collings formulated and put into effect three co-operative plans.

The first was adopted May 31, 1918, and is denominated the pension and relief plan. It provides for certain annuities to be paid to retiring employes; and for death benefits based and graduated upon the length of service and payable to a beneficiary to be selected or changed by the insured from a classified list of dependents who were preferred in the order of their degree of relationship. In the absence of such dependents, it further provided that, with the written consent of the company, an employe might select a beneficiary outside the enumerated class of dependencies. The death benefit plan was not put into operation, but, in lieu thereof, the company contracted for group insurance on the same plan as to dependents, whereby it paid the premium and had issued to it by the Equitable Life Insurance Association a single policy covering the employes, to each of whom was given an employe's certificate of insurance. The latter provided that payment should be made in accordance with its terms to the beneficiary designated as entitled to receive the same. And, *if there be no such beneficiary surviving at the death of the employe, payment will be made to the first named beneficiary or class of beneficiaries who shall survive all classes of designated beneficiaries. The employes (a) widow or widower; (b) surviving issue; payment, however, to be made to the survivors of the parents and adult children as trustees for the equal benefit of the surviving issue per stirpes. . . . '*

Further provisions authorized the employee, with the consent of the company, to make a change of the beneficiary to any of the preference beneficiaries designated in the certificate and in accordance with them, being in this respect similar to the pension relief plan. The group policy was somewhat more elaborate than the certificate, but referred to it as designating the beneficiary.

The third or stock purchasing plan was put into effect July 1, 1922. This was printed in pamphlet form, and, together with an explanatory letter by the president, was before that date mailed to each employe. It authorized each of those who had been in service for one year to participate in the purchase of the company's stock in accordance with the plan. Substantially its provisions were that the company should retain 10 per cent. of the employe's monthly wage, and supplement this by a contribution of 50 per cent. of the amount so retained, and deliver these sums to three trustees to be selected by the

company from its board of directors, who were to hold the funds until a sufficient amount had accumulated to purchase one or more shares of the company's stock, and then to purchose from the company, and it would issue to them treasury stock at market prices, the stock to be held in the names of the trustees, and voted by them, and all dividends accruing thereon to be paid by them and applied along with the other funds so received by them to the purchase of more stock; this arrangement to continue until the 1st of July, 1927, at which time the accumulated stock was to be transferred and issued to the employe. In the meantime he was forbidden to assign or transfer the stock. If he was discharged or resigned, his contribution was returned with interest, and he forfeited all other rights. If he desired to withdraw from the plan, he could make a written request, together with his reasons therefor, to the board of directors of the company, and, if they approved, he was paid his contributions, with interest. When retired on the pension list, his stock was issued to him. It was further provided:

"In the event of an employee's death before July 1, 1927, all stock held by the trustees for his benefit and cash standing to the credit of the employee shall be delivered to the beneficiary named by him or to his estate."

It was also provided that the plan might be abolished, revised, or amended by the board of directors, if it conflicted with any statute, or was thought by them to be to the best interest of the company or of the employees for them so to do.

Mr. Collings, as an employe, received a certificate of insurance of $1,000 under the group insurance plan dated June 1, 1918; and on the 12th of June, 1922, signed a written application upon a form prepared by the company for the use of its employees who desired to engage in the stock purchasing plan. On the same sheet of paper, and just below his signature to the application, was a form prepared by the company designating the beneficiary, which Mr. Collings also signed. It reads:

"I hereby agree that if my death occur during the life of this plan, all shares of stock or cash standing to my credit at the time of my death shall be paid to the beneficiary named in the insurance policy carried for me by the Standard Oil Company (Kentucky)."

The beneficiary named in the policy was Annie T. Collings, wife of the insured. Mrs. Collings had died about a year previous to this application, and on October 5, 1922, Mr. Collings made a request in writing for a change in the beneficiary in the insurance certificate from Mrs. Annie T. Collings to his daughter, Christine Collings Hall. This was not presented to the board of directors of the Standard Oil Company, but was approved by the secretary and treasurer of the company, and accepted by the insurance company, and the change made as requested. Mr. Collings died December 25, 1924, testate, survived by his two daughters, Mrs. Christine Hall and Mrs. Edith Collings Siter, and one son, Allison Collings. By his will, after certain specific bequests, the testator devised the residue of his estate to his two daughters equally; it being stated that ample provision had been made for the son by gifts and the will of his mother. After its probate, Mrs. Hall collected the insurance policy without objection, but a controversy arose over the succession to the participation stock, amounting to 295 shares of the value of $35,000, and this suit was brought to determine that question.

Mrs. Hall contends that the various papers above set out were legally sufficient to, and did, vest her with the title to all of the stock at her father's death.

Mrs. Siter insists (1) that the whole plan is equivalent to an employee purchasing stock in installments at two-thirds its market value, the trustees acting as his agents, and the company issuing treasury stock therefor. That, while there was a restriction against alienation during the accumulation period, the purchaser could under the conditions named withdraw the funds he had invested, and was therefore the sole beneficiary and in full control; hence no trust was created. The paper of June 12, 1922, is testamentary in character, and, not being executed as a will, is ineffective, leaving the stock to pass under the residuary clause of the will, and to be equally divided between the sisters; (2) that, if the papers set out above were legally sufficient to create a trust in favor of the beneficiaries designated in the application, the title to the stock vested in the three children, and that the attempt to change the beneficiaries in the insurance policy on October 5, 1922, was unauthorized and ineffective, and the stock should be equally divided among the three. Allison Collings agrees with the sec-

ond contention made by Mrs. Siter. The chancellor decided in favor of Mrs. Hall, and the others appeal.

1.  It is well settled that, unless properly executed as a will, a gift to take effect at the death of the donor, who in the meantime retains full ownership and control of the subject of the gift, passes no right or title to the donee. Among the numerous cases in which writings attempting to dispose of the property at the death of the maker were held to be testamentary in character, and therefore ineffective, may be cited Morrison v. Bartlett, 148 Ky. 833, 147 S. W. 761, 41 L. R. A. (N. S.) 39; Ward v. Ward, 104 Ky. 857, 48 S. W. 411, 20 Ky. Law Rep. 986; Ison v. Halcomb, 136 Ky. 523, 124 S. W. 813; Pelley v. Earles, 107 Ky. 640, 55 S. W. 550, 21 Ky. Law Rep. 1395; Rudd v. Rudd, 184 Ky. 400, 214 S. W. 791; Knott v. Hogan, 4 Metc. (61 Ky.) 99; Drake v. Security Trust Co., 203 Ky. 733, 263 S. W. 4; Warsco v. Oshkosh Bank & Trust Co., 183 Wis. 156, 196 N. W. 829; Springvale National Bank v. Ward, 122 Me. 227, 119 A. 529; Stevenson v. Earl, 65 N. J. Eq. 721, 55 A. 1091, 103 Am. St. Rep. 790, 1 Am. Cas. 49; Russell v. Webster, 213 Mass. 491, 100 N. E. 637. In each of these cases, however, the donor retai ed the absolute power of disposition over the subject c ° the gift during his life and could have defeated the gift by a subsequent disposition.

It is equally well settled that, if the donor alienates his property in such a way as to lose unfettered control over it, and thus be unable to defeat the gift by subsequent disposition, the gift will take effect, even though its enjoyment is postponed until the death of the donor. Also it will be admitted that a trust may be created for a fixed period, and that future earnings are the subject of a trust; that the grantor may name himself as a cestui que trust or as one of several cestui que trustents; the fundamental elements of a trust being "that the trust property so long as the trust lasts is irrevocably devoted to the benefit of certain specified persons called cestui que trustents, of whom the donor may be one." 3 Bouvier's Law Dictionary, 3328. He may reserve the power of revocation or of changing the terms of the trust, though, as construed by our court, he can make no such changes in the absence of a reservation. Beard v. Beard, 173 Ky. 131, 190 S. W. 703, Ann. Cas. 1918C, 832; Burton v. Burton's Trustee, 198 Ky. 429, 248 S. W. 1031; Garrott v. McConnell et al., 201 Ky. 61, 256 S. W. 14; Lee v. Belknap, 163 Ky. 418, 173 S. W. 1129. And we can perceive

no reason why the same principle should not apply to a reservation authorizing a change of beneficiaries. In the consideration of this case we do not deem it material as to whether the dual contributions constituted joint or separate trusts. The employe alienated a portion of his earnings, together with a certain bonus contributed by the company, for a fixed period to trustees to invest in stock in their own name for his benefit. They were to collect and invest the dividends in like manner, hold and vote the stock, and otherwise exercise entire control over it during the accumulation period, and to deliver it to him at the expiration of that period, or upon his retirement on a pension list. A qualified right of revocation was reserved, which enabled him to abolish the trust and receive back his personal contributions with interest, in the event of his resigning or being discharged or withdrawing from the plan with the company's consent. But, consistent therewith, during the life of the plan the property was irrevocably devoted to the benefit of the cestui que trustents, and therefore constituted a valid trust in favor of the employe. As to the additional cestui que trustent, it may be said that the plan is primarily for the benefit of the employe, and that he is treated as the beneficial owner throughout, except as provided in the paragraph quoted supra, which reads:

> "In the event of an employe's death before July 1, 1927, all stock held by the trustees for his benefit and cash standing to the credit of the employe shall be delivered to the beneficiary named by him or to his estate."

If this provision were eliminated there can be no doubt that, subject to the restriction upon alienation, the employe was the equitable owner of the stock, and, in the event of his death during the life of the plan, its succession would have been transmitted by inheritance or devise as directed by him. From this conclusion it is argued that this paragraph attempts to confer a power already possessed by the owner of the fee which is not enlarged or diminished thereby, leaving the owner the full power of disposition, and rendering the attempted exercise of the power ineffective, unless executed as a will. If this paragraph attempts to confer the power of appointment upon the donee of the trust, there is much force in the argument; but we do not so construe it. On

the contrary, the settler was reserving such power to himself as cestui que trust to take the stock at completion of the plan, but reserved and exercised the right to name additional beneficiaries who would take if he died in the meantime. He could do this with his own contributions, and, with the consent of the company, could exercise the same power with the bonus given for that purpose.

Suppose A. gives a sum of money to a trustee to be loaned for five years, with direction to pay principal and interest to B. if A. died within that period, but in the event of his surviving that period, to pay it to C., can it be doubted that a valid trust is created, and that both B. and C. take a present interest in the fund, though necessarily the actual enjoyment of the fund will vest in but one of them; the consummation of each right depending upon the contingency of A. dying within, or surviving, the life of the plan? The same principle would apply if A. directed the fund paid to C. at the end of the period, but reserved and exercised the right to appoint a person to take if he (A.) died in the meantime, which is entirely similar to this case. Thus construed, the plan created a trust, with power reserved in the settlor to appoint additional beneficiaries, and the writing signed by Mr. Collings on June 12, 1922, was a valid exercise of such power of appointment.

2. The writing of June 12, 1922, reads:

"If my death occur during the life of this plan, all shares of stock or cash standing to my credit at the time of my death shall be paid to the beneficiaries named in the insurance policy carried for me by the Standard Oil Company (Kentucky)."

Whom did Mr. Collings mean by the use of these words? Obviously, reference may be had to the policy to identify the intended person. But the right was reserved in the policy to change the beneficiaries, though not so reserved in the stock plan. Did he intend for the person then named in the insurance policy to take the stock, or did he intend for it to be taken by the person who should be named as beneficiary in the insurance policy at the time of his death? It is strongly argued that, as no power of changing beneficiaries was reserved in the stock purchasing plan, none such existed, and that, when the power of appointment was once exer-

cised, it became final. At the death of Mrs. Annie Collings the three children were designated beneficiaries in the insurance policy as clearly and effectively as if their names had been written therein. Mr. Collings, as author of the various relief plans, was familiar with their provisions, and, of course, knew of his wife's decease, and, in the execution of the writing quoted supra, intended to, and did, appoint the three children as beneficiaries of the trust, and, having thus fixed their status, could not change it thereafter; hence the subsequent substitution of Mrs. Hall as the beneficiary in the insurance policy did not affect the stock succession.

Admittedly the question is debatable. It would seem, however, that, if Mr. Collings had intended irrevocably to designate his three children as beneficiaries of the stock, the natural thing for him to have done would have been to insert their names in the writing of June 12th. While he knew that they constituted the class of beneficiaries who would then take under the policy, he also knew that he might change the beneficiaries therein in accordance with its provisions, and no doubt intended that the same beneficiary should collect both the insurance and the stock, and, as the policy provided for changes in beneficiaries, we think it was intended that such changes in the insurance should also apply to the stock. This was equivalent to reserving the power of changing the beneficiaries in the trust, and is consistent with the rules of law applying to trusts.

3. As Mr. Collings intended for the insurance and stock to vest in the same person who was designated as the beneficiary in the insurance at the time of his death, it follows that, if he had died between June 12 and October 5, 1922, both insurance and stock would have vested in the three children equally. And, as the right to change the stock beneficiaries is based solely on the right to change the beneficiaries in the insurance, the right of Mrs. Hall to take all of either insurance or stock depend upon whether she was effectively substituted as beneficiary in the policy. In this respect, after naming Mrs. Annie Collings as beneficiary, the individual certificate provides:

"Subject to the right of the employe with the consent of the employer to change the beneficiary in accordance with the policy provisions."

The right is thus reserved to change the beneficiaries, but it is a restricted right, that can only be exercised with the consent of the employer, and in accordance with the policy provisions; hence, to ascertain the nature and extent of and the limitations upon the right to make such changes, reference must be had to the policy provisions. The only other reference to such changes is in the specimen employer's certificate, which provides:

"That the employe, with the consent of the employer should have the right to change the beneficiary to any of the preference beneficiaries designated in the life insurance plan, stated on the second page of said certificate and in accordance therewith."

It will be observed that the two provisions are similar as to the restrictions upon the right of the employe to make changes in the beneficiary. On the second page of the specimen employer's certificate it is specifically provided that beneficiaries are to be designated in accord with the following schedule:

"The employe's: 1. Widow or widower. 2. Children in equal shares. Payment to be made to surviving parents and adult children as trustees for the benefit of the employe's children. Should any child have died before the employe, his or her share shall be payable in equal parts to such child's children then living. 3. Parents or the survivor of them. 4. Other blood relation, conceded by the employer as being dependent upon the employe to at least 20% of his or her wages.

The provisions relative to the designation of beneficiaries seem to have been taken verbatim from the pension relief plan, in which relief benefits were given the employe's dependents at his death. That plan, however, was not put into effect, and has no bearing upon this case, except as it may indicate the settled purpose of the company in the matter. It thus appears that this is an industrial form of insurance carried by the employer for the employe's dependents, who are to be designated in accordance with a carefully prepared plan of preferred classification in the following order: (1) Surviving spouse. (2) Children in equal shares. (3) Surviving parent or parents. (4) The employe may have neither

spouse nor children, and be bereft of parents, and yet have collateral kindred dependent upon him. If these dependents require as much as 20 per cent, of his wages, such persons constitute the fourth class. (5) The employe may not have any dependents, and none of the first four classes apply, yet, in order to assure his decent interment, a limited policy may be issued to outsiders for that purpose. However, an employe who is single and without children at the time his policy is issued, might properly designate a beneficiary in class 3, and, if his parents are dead, designate one in classes 4 or 5 and subsequently marry and raise children. In such event, if the policy should be paid to the original beneficiary, it would be diverted from the real dependents and the beneficent purpose of the employer frustrated; hence it was provided that the employer might, with the consent of the company, change the beneficiary, but, in making such change, it is clear that the substituted beneficiary must be a person that could be designated as an original beneficiary. It thus appears that the designation of the beneficiary must be in the order of preference, but it is not necessary to finally determine that question here, as Mrs. Collings was dead, and the children, of whom Mrs. Hall was one, stood next in the order of preference. The fatal objection to her selection is that it provided that the designation to the second class shall be to children in equal parts. No discrimination is permitted between them. Certainly a designation of one to the exclusion of the others is more unequal and discriminatory than it would be to designate all of them and provide different amounts for each.

Cases may arise in which some children are dependent upon the employe while others are not, or in which he may have a preference between them. Perhaps it would be well in certain cases to give the right of choosing one or more of these, but this is not authorized by the plan. And, as the power to designate a beneficiary is limited by the instrument that authorized its exercise, the insured is bond by such limitations. It follows that the selection of Mrs. Hall as the sole beneficiary in the insurance was unauthorized and ineffective for any purpose. Hence the proceeds of both insurance and stock should have been equally divided among the three children. The division of the stock is not affected by the fact that Mrs. Hall was permitted to collect the insurance.

Appellants also insist that the company's consent was never given to a change of beneficiary. The directors took no formal action upon Mrs. Collings' application for a change of beneficiaries, and this was approved only by the sectretary, and it is argued that the employer's consent was not obtained as required by the policy. The record shows the insurance plan to have been in operation for nearly ten years; that the directors have never taken any action in these matters; and that applications are uniformly approved by the secretary with the tacit consent of the employer. Perhaps this acquiescence is sufficient to show that the company has ratified the action of the secretary or so far as he has approved changes of beneficiaries in accordance with the policy provisions. But this would not authorize him to give the company's consent to change the terms of the policy.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.