## WILLIAMS et al. v. THRASHER et al.
### No. 6654.

Circuit Court of Appeals, Fifth Circuit.
Jan. 17, 1933.

Rehearing Denied Feb. 20, 1933.

Jno. J. King, J. Q. Mahaffey, J. I. Wheeler, and C. E. Bryson, all of Texarkana, Tex., for appellants.

W. B. Chauncey, of Longview, Tex., T. B. Ramey, Jr., and Robert F. Higgins, both of Tyler, Tex., and Frank C. Jones, of Houston, Tex., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Trespass to try title for an undivided one-fifth interest in 160 acres of oil producing land in Texas, which plaintiff's grandfather, J. M. Mays, had owned, and which, the trial court instructed the jury, unless prevented by the creation of a trust as alleged by defendants, descended to and was owned by her, and for damages. The verdict was for the defendants on a finding that J. M. Mays, the common source of title, had by parol gift settled on his son, J. H. Mays, under whose deed defendants claim, certain vendor's lien notes secured by an express lien on the property, in trust to realize upon them and distribute the proceeds to the heirs, and that the son, by retaking the property in cancellation of the notes and conveying it for a sum which he distributed among the heirs, had executed the trust in accordance with its terms.

The other defenses in the case all passed out of it in the course of the trial, except bona fide purchase and ratification by the plaintiff of the act of her uncle in selling the property. The court determined that the record did not support these defenses. He charged the jury that plaintiff had the legal title to the interest sued for, and that she was entitled to recover in the suit unless the jury found, under the instructions of the court, that a trust was created as claimed by defendants.

Upon the question whether the record sup-

ports the finding of the jury under the instructions of the court that a parol trust was created authorizing Mays to make a binding sale of the land, the briefs argue interestingly and exhaustively whether, if a trust was created, it was for more than to collect the notes and divide the proceeds.

Appellants argue that this was the only authority, upon the most extreme view of the evidence, that the settlor gave the trustee. They say that the superior title was not trusteed; that being real estate it could not have been trusteed by parol under the circumstances of this case; that it descended to the heirs on the death of Mays; and that when J. H. Mays canceled the notes on which no principal had been paid, and only a small part of the interest, by taking from the vendee a reconveyance of the land, he reunited in the heirs full title, the superior title and the claim of the vendee, thus discharging the duties of his trusteeship, if they ever existed, by realizing on the notes through the recovery of the land. Appellees argue that the trusteeing of the notes for the purpose of realizing upon them carried with it the power to do so, either by sale of the notes or the retaking of the land, and the sale of it. Much argument was pressed and authorities cited on these points. Appellants advanced as authoritative in support of their claim that the reserved superior title was the real, the only title, Johnson v. Smith, 115 Tex. 193, 280 S. W. 158. While appellees, countering in support of their proposition that the superior title, except when necessary to protect the notes it secures, is no title at all, cite Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S. W. 296, 29 A. L. R. 607.

We do not find it necessary to decide these interesting questions, for in no view of the evidence does it establish the creation of any kind of trust. What the testator said was with the purpose and intent of making a testamentary disposition of his Texas property, without regard to whether it consisted of the notes, or because of the long and great default in payment, of the land itself. What he wanted done was to have his son, after his death, carry out his instructions. The son testified on direct examination: "He wanted me to take those papers in the business and straighten it up, and divide it up among the heirs. These were my instructions; take the place and manage it, settle it up to the best of my ability and divide up the proceeds and keep the minor's part until she became of age or married."

In answer to the court's question, he said, "Well, of course that was the only piece of property my father had at that time. He wanted me to settle it up, and take care of it, and dispose of the proceeds among the heirs," while his testimony on cross-examination, question and answer, was:

"Q. I believe that your testimony was that he wanted you at his death to take charge of his affairs and distribute all the property he had among his children? A. Yes sir; that is about the substance of it.

"Q. He directed you, as I understand it, to collect these notes and get the money out of them and divide it among his children? A. Yes sir and wind up the affairs of his estate.

"Q. You got the notes after his death, did you not? A. Yes sir.

"Q. You haven't any recollection of having possession of these notes before his death? A. No, sir."

This evidence shows one thing, and one thing alone: That the father, desiring to make provision for the handling of his estate after his death, and ignorant of the formalities necessary to make such disposition effective, was undertaking to and did give to his son, not the present dominion over his property, but testamentary instructions for distributing it among his heirs after his death. Such an attempt, of course, fails in Texas as elsewhere. Barnes v. Horn (Tex. Civ. App.) 233 S. W. 859; Milam v. Stanley (Ky.) 111 S. W. 296, 17 L. R. A. (N. S.) 1126; Drake v. Security Co., 203 Ky. 733, 263 S. W. 4; Re Lindhorst's Estate, 216 Mo. App. 473, 270 S. W. 150; Moore v. Tiller (C. C. A.) 61 F.(2d) 478.

Both appellants and appellees have argued this case as though what was sought to be proven here was a parol gift, either inter vivos or causa mortis, and proof therefore of delivery was essential. There are authorities outside of Texas laying it down that though proof of delivery is essential to the establishment of a parol gift of personalty, either inter vivos or causa mortis, a parol trust of personalty may be settled without delivery. Krankle v. Krankle, 104 Ky. 745, 47 S. W. 1084, 1086; Williamson v. Yager, 91 Ky. 282, 15 S. W. 660, 34 Am. St. Rep. 184; Roche v. George's Executors, 93 Ky. 609, 20 S. W. 1039.

No Texas authorities have been cited to us differentiating as to the essentiality of proof of delivery between cases of parol gifts and parol trusts. All of the Texas cases cited as requiring proof of delivery make that requirement indifferently in all cases. There are Texas cases, however, Brown v. Fore (Tex. Com. App.) 12 S.W.(2d) 114, 117, 63

A. L. R. 435; Cowen v. First Nat. Bank, 94 Tex. 547, 63 S. W. 532, 64 S. W. 778; Weems v. First Nat. Bank (Tex. Civ. App.) 234 S. W. 931, 932; Schauer v. Von Schauer (Tex. Civ. App.) 138 S. W. 145, which suggest, if they do not establish, that delivery is not essential where the thing given is an intangible.

In arriving at our conclusion that no case of parol trust is made out, we have not, though we think it plain that the evidence fails to show delivery, rested our conclusion on this failure of the proof, but upon the view that wholly apart from delivery, the case fails because it clearly shows that there was neither intent nor attempt to do more than make a testamentary disposition. We therefore do not determine, as we should have to do if the defect in the proof was in the matter of delivery alone, whether under the circumstances of this case proof of delivery was essential.

Further, since we believe that under either the strict rule of proof of parol trust which prevails generally,[1] or under the preponderance rule which appellees, on the authority of Lord v. N. Y. Life Ins. Co., 95 Tex. 216, 66 S. W. 290, 56 L. R. A. 596, 93 Am. St. Rep. 827, a case of parol gift, claim applies in Texas, no case of gift in trust is made out, we do not find it necessary to decide which is the correct rule. We hold, and that holding is decisive of this appeal, that upon the plainest principles, while the evidence does show an attempted testamentary disposition, it is wholly insufficient to establish the creation of a trust; that the deed of J. H. Mays under which defendants claim was made without authority; and that it had no effect to pass title to plaintiff's interest in the land.

Appellees have devoted a considerable portion of their briefs to a discussion of the issues of bona fide purchase and ratification. The District Judge was right in refusing to submit these issues to the jury. They are without any support whatever in the record. Of the claim of bona fide purchase, it is sufficient to say that defendants were charged by the record with knowledge of plaintiff's title. The title to the reserved vendor's lien notes, and therefore to the superior legal ti-

tle, was on the record in J. M. Mays. At his death it descended to and vested in his heirs, for whose benefit J. H. Mays, as cotenant, cleared it of the Jones' claim. No conveyance, out of J. M. Mays or plaintiff, was shown. There is no basis for a bona fide claim.

As to ratification by affirmance, it is perfectly clear that there is no basis for this defense, since its prime elements, a knowledge of what had been done and an adoption of it, are wholly wanting. It is fundamental that when one deals with the property of another not only without his authority, but without his knowledge, that other cannot be held to the contract until the facts have been made known to him and he has consented to what was done. Here not only have defendants not discharged the burden of proving that the plaintiff knew of and assented to the act, but the evidence is undisputed that until shortly before this suit she was not only not told of the conveyance, but she was not even told, and did not know, of the existence of the land, and that as soon as she learned of its existence she brought this suit to recover it.

The doctrine of ratification is not a catchpenny working covertly to deprive the ignorant and the unwary of their rights. It is a substantial doctrine based on consent. It is in substance that persons competent to contract may, by an act of will deliberately and voluntarily assenting to a contract made, or act done for them by others, adopt it as their own, and that when they have done so they will be bound by it just as though they had been parties to it from the beginning. Just as there can be no valid contract without a meeting of the minds, so there can be no ratification except where, with an adequate knowledge of the facts, one competent to contract assents to and adopts as his own the act or agreement of another. Plaintiff's motion for an instructed verdict should have been granted. The case, however, having been tried to a jury, must go back to be tried again. Am. Cyanamid Co. v. Wilson & Toomer Fertilizer Co. (C. C. A.) 51 F.(2d) 665; Slocum v. N. Y. Life Ins. Co., 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029. We may not do more than reverse the judgment and remand the cause, with directions to instruct a verdict for plaintiff if, on another trial, the record is the same.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

---

[1] In order to prove the settlement of a parol trust, there must be clear and unequivocal evidence, and it must on the whole be equivalent to that required to prove a resulting trust and more than a mere preponderance of the evidence. Scott v. Miller, 179 Ark. 7, 13 S.W.(2d) 819; 3 Pom. Equity (4th Ed.) pp. 1008, 1009; 26 R. C. L. 1203; Miller v. Thatcher, 9 Tex. 482, 60 Am. Dec. 172, and the Kentucky cases, supra.