El Juez Asociado Señor Rebollo López
emitió la opinión del Tribunal.
En 1998, Fernando Rodríguez suscribió un contrato de seguro con Transamerica Occidental Life Insurance Company (TOLIC) para adquirir una póliza de seguro de vida por un millón de dólares. En la referida póliza, Rodríguez designó como beneficiario, entre otros, a su hijo G. Rodríguez en un treinta y ocho por ciento del monto total de la mencionada póliza. En la póliza se hizo la salvedad de que las cantidades que correspondieran a beneficiarios menores de edad se mantendrían en un trust que sería administrado por el Sr. Orlando Rodríguez Álvarez, hermano del asegurado, hasta que el menor alcanzara los veinticinco años de edad.(1) La nota dispone específicamente: *808 “Children’s Benefit in trust with Orlando Rodríguez Álvarez, brother of the insured, until beneficiaries age 25”. Apéndice de la Solicitud de certiorari, pág. 239.
Antes de morir, Fernando Rodríguez otorgó un testamento ológrafo en el que reiteró su voluntad de que los beneficios de la póliza se mantuvieran en un fideicomiso, el cual sería administrado por la Sra. Neyda Pumarejo o, en su defecto, por el mismo fiduciario, esto es, Orlando Rodríguez Álvarez, que nombró en la nota antes mencionada. En dicho documento dispuso, en lo pertinente:
En mi seguro de vida hay cuatro beneficiarios con sus porcientos específicos del total de los beneficios. La primera, Neyda Pumarejo Cintrón, recibirá su porción una sola vez. Los otros tres beneficiarios, mis hijos [G.R.R.F.], Mayra Luz Rodríguez Lugo y Fernando Roberto Rodríguez Lugo, recibirán su porción del seguro como sigue: El dinero será depositado en certificados de ahorros garantizados por el FDIC, cuya institución emitidora será elegida por los administradores que se designan más adelante. De los intereses que generen la porción de cada cual[,] le será pagado de la manera siguiente, mensualmente: Hasta los 10 años: Mil dólares Hasta los 15 años: Mil trescientos dólares Hasta los 20 años: Mil quinientos dólares Hasta los 25 años: Mil ochocientos dólares Si los intereses no fueran suficientes, el faltante le será pagado del principal disponible de su porción. Si hubiera un sobrante de los intereses, el mismo se re-invertirá a nombre de quien tuvo el sobrante. La administración de los dineros de los seguros, su inversión y distribución, serían administrados por Neyda Pumarejo Cintrón. Si ésta se incapacitara o renunciara a dicha representación o muriera, la administración pasará a Orlando Rodríguez Álvarez. ... El balance que pueda haber en la cuenta de lo recibido por el seguro de cualquiera de mis hijos, les será entregado para ser usado a su sola discreción al cumplir estos 25 años. La palabra seguro en este testamento significa cualquier seguro que pague beneficios por mi muerte, cuyas porciones en cada póliza serán porcentualmente iguales a los mismos beneficiarios, según consten designados en la póliza que por un millón de dólares mantengo a esta fecha y cuyo agente productor fue Adriano Valle Poza, aunque en cualquier otro seguro no aparezca designación de beneficiarios ni porcientos. ... Se aclara que la palabra administrador, como utilizadas en las páginas uno, dos y tres de este documento, significa además un fiduciario, que tendrá, entre otras, la obli *809 gación de velar que los dineros bajo su control no sean utilizados como colateral para tomar préstamo alguno o para cualquier otro uso que no sea el aquí designado.
Cuatro años más tarde, Fernando Rodríguez falleció. Como consecuencia, tanto Orlando Rodríguez como la madre del menor, Sra. Vanya Febles Gordián, reclamaron los beneficios de la póliza del seguro de vida en nombre del menor, G.R.R.F. El 13 de septiembre de 2002 TOLIC presentó una demanda de interpleader bajo la Regla 19 de Procedimiento Civil,(2) ante el Tribunal de Primera Instancia, Sala Superior de San Juan, solicitando que se le ordenara a los dos interesados litigar entre sí el derecho a recibir el beneficio en nombre del menor y consignó en el tribunal la suma de $388,043.51, la cual incluye el treinta y ocho por ciento correspondiente al menor y los intereses acumulados hasta ese momento.
El litigio conllevó una complicada serie de incidentes que incluyeron una anterior comparecencia ante el Tribunal de Apelaciones. Una vez regresó el caso ante la Sala Superior de San Juan, ésta dictó una sentencia sumaria parcial en la cual determinó que el fideicomiso constituido por Rodríguez era válido, puesto que no se regía por el Código Civil sino por la reglamentación concerniente al área de los seguros. Por lo tanto, el foro de instancia entendió que las instrucciones allí impartidas eran obligatorias para la compañía de seguro. Así, indicó que la validez de las instrucciones del asegurado, relativas al fideicomiso, no dependen de las normas del fideicomiso del Código *810 Civil. De igual forma, dicho foro declaró bien hecha la consignación de TOLIC, pero le impuso el pago del interés legal desde el momento de la consignación hasta la fecha de la sentencia.
Insatisfecha con la decisión, Vanya Febles Gordián, a nombre propio y en representación de su hijo menor de edad, acudió ante el Tribunal de Apelaciones. En su recurso de apelación señaló, en síntesis, que el fideicomiso que designa a Orlando Rodríguez Álvarez como fiduciario es inválido por no haberse establecido mediante escritura pública. Por su parte, TOLIC acudió al Tribunal de Apelaciones y cuestionó la imposición del pago de intereses computados desde la consignación hasta la fecha de la sentencia. El Tribunal de Apelaciones consolidó los recursos.
El foro apelativo intermedio modificó en parte la sentencia sumaria parcial que dictó el Tribunal de Primera Instancia. Resolvió, en síntesis, que TOLIC no estaba obligada al pago de intereses desde la consignación hasta la sentencia, y confirmó el dictamen recurrido en cuanto a los restantes extremos.
Inconforme con el dictamen anterior, Febles Gordián, en representación del menor G.R.R.F., acudió —mediante un recurso de certiorari— ante este Tribunal y le imputó al foro apelativo intermedio haber errado
... al determinar que el fideicomiso en el seguro de vida fue confirmado en el testamento ológrafo y que éste fue oportuna y debidamente protocolizado para establecer que el fideicomiso ya consta en escritura pública.
... al establecer que la póliza y el testamento ológrafo se complementaban y establecer que tal complemento creó el fideicomiso, llamando al testamento “complemento testamentario del seguro”.
... al determinar que el testamento podía disponer del beneficio de la póliza de seguro ya que tal beneficio es un bien como otro cualquiera.
... al determinar que la consignación de TOLIC estuvo bien hecha desde el depósito de los fondos. Solicitud de certiorari, pág. 13.
El 5 de mayo de 2006 expedimos el recurso. Contando *811 con la comparecencia de las partes y estando en posición de resolver el recurso presentado, procedemos a así hacerlo.
f-H
A. El Código Civil establece que “[e]l fideicomiso es un mandato irrevocable [en] virtud del cual se trasmiten determinados bienes a una persona, llamada fiduciario, para que disponga de ellos conforme lo ordene la que los trasmite, llamada fideicomitente, a beneficio de este mismo o de un tercero llamado fideicomisario”. 31 L.P.R.A. see. 2541. Este mandato puede establecerse para cualquier fin que no contravenga la ley o la moral pública. 31 L.P.R.A. see. 2547. Un fideicomiso puede constituirse sobre toda clase de bienes muebles e inmuebles, corporales e incorporales, presentes o futuros. 31 L.P.R.A. see. 2544. El fideicomitente puede crear el fideicomiso para cualquier fin y bajo cualesquiera términos o condiciones que no infrinjan la ley o la moral pública o que no se prohíban específicamente por la ley. 31 L.P.R.A. see. 2562. “El fideicomiso puede constituirse por testamento, para que tenga efecto después de la muerte del fideicomitente, o por acto inter vivos.” (Énfasis suplido.) 31 L.P.R.A. see. 2542. Contrario a lo anterior, el Código Civil especifica que “[e]l fideicomiso inter vivos debe constituirse por escritura pública”. (Énfasis suplido.) 31 L.P.R.A. see. 2543.
Los contornos de la figura del fideicomiso están claramente definidos. La dificultad que encierra la referida figura estriba en el hecho de que el fideicomiso puertorriqueño es una institución muy particular que incorpora los principios del trust anglosajón e intenta armonizarlos con nuestra tradición civilista. Álvarez v. Srio. de Hacienda, 78 D.P.R. 412 (1955), en reconsideración Álvarez v. Srio. de Hacienda, 80 D.P.R. 16 (1957). No obstante, las lagunas inherentes a la adopción de esta figura de origen mixto en nuestra jurisdicción, según reconoció este Tribunal en Dávila v. Agrait, 116 D.P.R. 549, 565 (1985), permite que nos *812 enriquezcamos de su acervo cultural y jurídico, pues “[s]u armonización!,] conforme a los preceptos del Derecho [C]ivil[,] no puede constreñir la institución que se quiso integrar”. Por lo tanto, debemos nutrirla de la flexibilidad que caracteriza al trust anglosajón, abandonando los criterios de rigidez e inmovilidad de la fiducia romana. Dávila v. Agrait, ante.
B. Una vez aclarados estos aspectos relativos a la figura en controversia, debemos destacar algunos principios generales del derecho de seguros. El contrato o póliza de seguro de vida es un contrato entre una persona y un asegurador que provee para el pago de una suma específica de dinero al beneficiario designado en la póliza al morir el asegurado. El interés asegurable es la vida del asegurado. M. Jasper, Insurance Law, Oceana Publications, 1988, Cap. 2. Véase, además, Art. 4.020 del Código de Seguros de Puerto Rico (Código de Seguros), 26 L.P.R.A. see. 402.
Es menester señalar que el contrato de seguro, así como todo tipo de contrato, constituye ley entre las partes, siempre que concurran los elementos esenciales para su validez. Gen. Accid. Ins. Co. P.R. v. Ramos, 148 D.P.R. 523 (1999). El Art. 11.250 del Código de Seguros, 26 L.P.R.A. sec. 1125, dispone que los contratos o pólizas de seguros deben interpretarse de forma global, a base de la totalidad de los términos y las condiciones. González v. Universal Solar, 167 D.P.R. 82 (2006); Molina v. Plaza Acuática, 166 D.P.R. 260 (2005); López v. Atlantic Southern Ins. Co., 158 D.P.R. 562 (2003); Soc. de Gananciales v. Serrano, 145 D.P.R. 394 (1998); Meléndez Piñero v. Levitt & Sons of P.R., 129 D.P.R. 521 (1991). Así, cuando los términos de la póliza son claros, específicos y libres de ambigüedades, las partes tienen que atenerse a lo allí dispuesto y no se admitirá una interpretación que vulnere el claro propósito y la voluntad de las partes. Molina v. Plaza Acuática, ante.
Para atender las controversias planteadas en el *813 caso ante nuestra consideración resulta pertinente un breve análisis de cómo se han atendido situaciones similares en el derecho anglosajón. En Broga v. Rome Trust Co. of Rome, 272 N.Y.S. 101 (1934), se consideró testamentario un fideicomiso sobre el dinero de una póliza de seguro de vida a pesar de que éste se creó mediante un instrumento distinto a un testamento. Ello significa que en el derecho anglosajón un fideicomiso testamentario puede crearse cuando su propósito no es transferir la propiedad del fideicomiso durante su vida, sino que tenga efecto al momento de la muerte, independientemente del instrumento que se utilice para su constitución. Roberts v. Taylor, 300 F. 257, 260-261 (9no Cir. 1924). Véase, además, Vigil v. Sandoval, 741 P.2d 836 (App. 1987). Las disposiciones en fideicomisos consideradas testamentarias son las que no tienen intención de hacer una transferencia en vida. Williams v. Thrasher, 62 F.2d 944 (5to Cir. 1933).(3)
h-1 i—I
A. Con el anterior marco doctrinal en mente, pasamos a atender la controversia que nos atañe. En esencia, debemos resolver si es válido el fideicomiso establecido por Rodríguez a favor del menor Gabriel Rodríguez.
Mediante los primeros tres señalamientos de error, Febles Gordián —en representación de su hijo menor de edad Gabriel Rodríguez— alega que el fideicomiso constituido por Rodríguez es inválido. Sostiene que el foro apelativo erró al determinar que el testamento ológrafo confirmó la validez del fideicomiso por haberse subsanado la falta de escritura pública con la protocolización del documento. Argumenta, además, que su validez no se puede basar en una *814 alegada complementación entre el seguro de vida y el testamento. Asimismo, aduce que no es correcto en derecho señalar que el monto del seguro de vida es un bien del que Rodríguez podía disponer por medio de un testamento.
En específico, la peticionaria Febles Gordián alega que el fideicomiso establecido por el padre de su hijo G.R.R.F. no tiene validez por tratarse de un fideicomiso ínter vivos que requería la forma de escritura pública. Señala que, en todo caso, de tratarse de un fideicomiso mortis causa, éste tampoco sería válido puesto que Rodríguez no podía disponer del monto de la póliza del seguro de vida en el testamento, ya que éste no forma parte de la herencia.
Debemos señalar, en primer lugar, que el Código de Seguros no dispone nada sobre la validez de un fideicomiso establecido en un contrato de seguro. En consecuencia, debemos acudir, de forma supletoria, a las disposiciones del Código Civil que regulan la materia. Como vimos antes, dicho cuerpo legal requiere que los fideicomisos ínter vivos se constituyan mediante escritura pública. El Código Civil también regula los fideicomisos mortis causa. Al respecto, el Código Civil establece que “puede constituirse [un fideicomiso] por testament[o p]ara que tenga efecto después de la muerte (Énfasis suplido.) 31 L.RR.A. see. 2542.
En el caso de autos, aun cuando el fideicomiso se constituyó inicialmente en la póliza del seguro de vida, lo cierto es que Rodríguez reiteró su voluntad al respecto mediante un testamento ológrafo válido. El testamento otorgado contiene todos los elementos para que se entienda configurado el fideicomiso: (1) un fideicomitente (Rodríguez); (2) que transmite unos bienes (monto de la póliza); (3) a un fiduciario (Orlando Rodríguez, en ausencia de la Sra. Neyda Pumarejo); (4) para que los administre conforme las instrucciones allí vertidas en beneficio de un fideicomisario (sus hijos, entre ellos, G.R.R.F.).
Contrario a lo que sostiene la peticionaria Febles Gordián, el hecho de que el monto de la póliza no forme *815 parte del caudal,(4) no impide que un causante disponga del mismo en un testamento válido. En numerosas instancias se ha reconocido la validez de disposiciones testamentarias no relacionadas al patrimonio del causante. Así, por ejemplo, Puig Brutau reconoce que la definición usual del término “testamento” —el acto mediante el cual una persona dispone para después de su muerte de todos sus bienes o de parte de ellos (Art. 616 del Código Civil, 31 L.P.R.A. see. 2121)— es apenas una elemental aproximación al concepto. J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1977, T. V, Vol. II, pág. 5. Para el referido tratadista, el testamento “es ... preponderante [mente,] aunque no exclusiva [mente], un acto de disposición de bienes; ... [s]in embargo, también puede contener declaraciones de carácter no patrimonial, incluso de manera exclusiva”. (Enfasis suprimido.) Id., pág. 10. Puig Brutau, incluso, reconoce que el testamento puede contener una disposición para variar la designación de un beneficiario de un seguro de vida. Id., pág. 11.
El Prof. Efraín González Tejera coincide con dicha posición cuando expresa que “[un] testamento no sólo puede referirse a disposiciones patrimoniales, sino también a relaciones de carácter no patrimonial, como el nombramiento de tutores, de albaceas, de contadores-partidores, reconocimiento de hijos naturales, instrucciones relacionadas con funerales y entierro, etc.”. E. González Tejera, Derecho de Sucesiones, San Juan, Ed. U.P.R., 2002, T. II, pág. 9.
El fideicomiso puede constituirse “por testamento, sin prescribir que éste deberá ser abierto, —el único que se otorga por escritura pública— queda claramente implícito que el fideicomiso puede constituirse por cualquier otra clase de testamento ... incluso cuando la particular clase no requiera la escritura pública”. L.F. Sán *816 chez Vilella, El Fideicomiso Puertorriqueño III, 37 (Núm. 3) Rev. C. Abo. P.R. 417, 427 (1976). Véase además García v. Rexach, 65 D.P.R. 526 (1945). De acuerdo con lo anterior, resulta forzoso concluir que el fideicomiso en controversia, tal como se constituyó en el testamento ológrafo, tiene validez en nuestro ordenamiento jurídico.
B. Ahora bien, el recurso ante nos requiere que nos pronunciemos en cuanto a la validez del fideicomiso tal como se constituyó en la póliza del seguro de vida. En este punto, debemos aclarar que —contrario a lo que concluyó el foro apelativo— de entenderse que el fideicomiso es ínter vivos, de ninguna manera se hubiera podido subsanar la ausencia del requisito de escritura pública con la mera protocolización del testamento ológrafo. El acta de protocolización no es el vehículo correcto para elevar a público un documento privado suscrito en Puerto Rico. Ponce Real Estate Corp. v. Registrador, 87 D.P.R. 215 (1963). Para ello se requiere el cumplimiento con la Regla 26 del Reglamento Notarial de Puerto Rico,(5) la cual dispone que al elevar un documento privado a público se tiene que acudir ante un notario público y redactar nuevamente el contrato privado en el que conste la existencia previa del documento, lo cual aquí no ha ocurrido. En consecuencia, de entenderse que el fideicomiso es de carácter ínter vivos, no tendría validez bajo nuestro ordenamiento.
No obstante, el mandato expresado por Fernando Rodrí *817 guez en la póliza de seguro no puede ser considerado un fideicomiso ínter vivos, sino un fideicomiso mortis causa, puesto que tendría efecto a su muerte. En vista de ello, debemos aplicar las disposiciones aplicables a los fideicomisos mortis causa.
Como hemos señalado antes, el Código Civil dispone que el fideicomiso puede constituirse por testamento para que tenga efectos después de la muerte. (Enfasis suplido.) 31 L.P.R.A. see. 2542. De la naturaleza permisiva de esta redacción podemos colegir que esta disposición no representa una limitación a la posibilidad de que se realice válidamente de otra forma que no sea un testamento, sobre todo si tomamos en cuenta que, acto seguido, el Código establece con carácter mandatario el requisito de escritura pública para los fideicomisos ínter vivos. 31 L.P.R.A. see. 2543.
No existe nada en nuestro ordenamiento que impida que el fideicomiso mortis causa, que se hace para que tenga efectos después de la muerte del fideicomitente, se haga a través de un mecanismo legal distinto al testamento. De hecho, ajustándonos a las expresiones de la doctrina, entendemos que no se debe restringir el marco de aplicación de la figura, cuando la misma ha sido acogida, precisamente, por la valiosa flexibilidad que se le reconoce.
Más aún, no es difícil encontrar estudiosos de la materia que hayan anticipado la posibilidad de que disposiciones sobre fideicomisos puedan incluirse en un contrato de seguro de vida. Se puede constituir un fideicomiso “cuando quien toma un seguro de vida y se ha reservado la facultad de cambiar [el] beneficiario, indica al ya designado que conserve póliza e indemnización en trust a favor de un tercero”. (Enfasis en el original.) R. Batiza, El Fideicomiso: teoría y práctica, 4ta ed. rev., México, Ed. Porrúa, 1980, pág. 181. De hecho, Batiza entiende que “[d]ebe estimarse además como testamentario el fideicomiso constituido en acto que no sea precisamente un testamento, pero cuyos efectos hayan de surtirse después de la muerte del *818 constituyente”. Batiza, ante. Esto ilustra la flexibilidad que la doctrina es capaz de otorgarle a la figura del fideicomiso.
Conforme a lo anterior, la naturaleza del seguro de vida hace viable que se admita la validez de un fideicomiso en él constituido si cumple con las disposiciones legales aplicables. Sabido es que este tipo de seguro constituye un acuerdo en el que la compañía de seguros se obliga a pagar cierta cantidad de dinero a la(s) persona(as) nombrada(as) como beneficiaria(s) cuando se produzca la muerte del asegurado. Véanse: 26 L.P.R.A. see. 402 y 26 L.P.R.A. see. 102. Siendo así, no cabe duda de que el contrato de seguro de vida representa el tipo de negocio que adquiere vida a la muerte del interesado. Por ende, y visto que la disposición sobre fideicomisos mortis causa no parece ser limitativa, entendemos que el fideicomiso constituido en la póliza del seguro de vida en el presente caso es válido en derecho.
C. Finalmente, atendemos el último señalamiento de error. La peticionaria Febles Gordián aduce que no procedía eximir a TOLIC del pago de intereses desde la fecha de la consignación del dinero del menor hasta la fecha en que se dictó la sentencia. Su argumento se basa en la disposición del Código Civil que establece que la obligación subsiste mientras el acreedor no haya aceptado la consignación o no haya recaído la declaración judicial de que está bien hecha. Art. 1134 del Código Civil, 31 L.P.R.A. see. 3184. No le asiste la razón a la peticionaria.
La consignación es “el depósito judicial ... de la cosa debida. Se pone la cosa bajo el poder de la autoridad judicial, que la retendrá y pondrá a disposición del acreedor”. (Énfasis suprimido.) J. Vélez Torres, Derecho de Obligaciones, 2da ed. rev., San Juan, Programa de Educación Continua, Universidad Interamericana, 1997, pág. 186. Esta figura “produce la extinción de la obligación; y es una forma de pago de la mismá cuando no se cuenta con la voluntad del acreedor”. R. Bercovitz y Rodríguez Cano, y *819 E. Valladares Rascón (comentaristas), en M. Albaladejo, Comentarios al Código Civil y compilaciones forales, Madrid, Ed. Edersa, 1991, Art. 1.181, T. XVI, Vol. 1, pág. 297.
Dicha figura está regulada por los Arts. 1130 al 1135 del Código Civil, 31 L.P.R.A. sees. 3185 a 3189. Mientras que el Art. 1130 dispone que la consignación libera de responsabilidad al deudor "cuando varias personas pretendan tener derecho a cobrar”, el Art. 1134 del Código Civil dispone que
[h]echa debidamente la consignación, podrá el deudor pedir al tribunal o juez que mande cancelar la obligación.
Mientras el acreedor no hubiere aceptado la consignación, o no hubiere recaído la declaración judicial de que está bien hecha, podrá el deudor retirar la cosa o cantidad consignada, dejando subsistente la obligación. 31 L.P.R.A. see. 3184.
Si bien la referida disposición legal dispone que el deudor no queda liberado de su obligación hasta la declaración judicial de corrección, ello no implica que esté obligado al pago de intereses desde el momento de la consignación hasta que recaiga dicha declaración. Una cosa es la liberación formal de la obligación, que surge como consecuencia del contrato, y otra, el requisito del pago de intereses. “[L]a doctrina española coincide en que la eficacia retroactiva de la consignación bien hecha alcanza hasta el momento en que tuvo lugar la práctica del depósito” (Enfasis en el original.) Vélez Torres, ante, pág. 189.
El hecho de que el tribunal a quo haya tardado en declarar correcta la consignación, no debe ser causa para imponerle a un deudor el pago de intereses por una suma que entregó conforme lo exige nuestro ordenamiento. Si, bajo esas circunstancias, se impusiera el pago de intereses desde la fecha de la consignación, desvirtuaríamos el propósito mismo de la Regla 19 de Procedimiento Civil, 34 L.P.R.A. Ap. III, que permite la litigación de partes adversas y que representa una de las instancias de mayor utilidad de la figura de la consignación. Véase Art. 1130 del Código Civil, 31 L.P.R.A. see. 3180.
La determinación judicial lo que hace “es decía *820 rar que la consignación está bien hecha, reconociéndole los efectos liberatorios que perseguía el deudor desde que depósito la cosa, por lo tanto debe surtir efectos desde [ese] momento”. Vélez Torres, ante, pág. 189. Concluimos, pues, que aunque la liberación formal del deudor depende de que el tribunal determine que la consignación está bien hecha, el pago de intereses a partir de la consignación no procede si, en efecto, se declara su corrección. Resolvemos que en casos como el presente, donde se declara correcta la consignación, se “retrotraen los efectos del pago al momento del depósito de la cosa ...”. Bercovitz y Rodríguez Cano, y Valladares Rascón, ante, pág. 299.
III
De acuerdo con los fundamentos antes expresados, pro-cede la confirmación de la Sentencia emitida por el Tribunal de Apelaciones en el presente caso, aun cuando por fundamentos distintos.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concurrió con el resultado sin opinión escrita.

 El trust es análogo al fideicomiso, según discutido más adelante.

 “Todas aquellas personas que tuvieren reclamaciones contra el demandante podrán ser unidas como demandadas y requerírseles para que litiguen entre sí dichas reclamaciones, cuando las mismas fueren de tal naturaleza que el demandante estaría o podría estar expuesto a una doble o múltiple responsabilidad. No será motivo para objetar a la acumulación el que las reclamaciones de los distintos reclamantes a los títulos en los cuales descansan sus reclamaciones no tengan un origen común o no sean idénticos sino adversos e independientes entre sí, o que el demandante asevere que no es responsable en todo o en parte de lo solicitado por cualquiera de los reclamantes. Un demandado que se hallare expuesto a una responsabilidad similar puede obtener el mismo remedio a través de una reclamación contra coparte o reconvención. Las disposiciones de esta regla suplementan y no limitan la acumulación de partes permitida en la Regla 17.” 32 L.P.R.A. Ap. III.

 Véanse, además: A.W. Scott, 1>msís and the Statute of Wills, 43 (Núm. 4) Harv. L. Rev. 521 (1930); O.L. Browder, Giving or Leaving-What is a Will?, 75 (Núms. 5 & 6) Mich. L. Rev. 845 (1977); H.W. Ballantine, When are Deeds Testamentary?, 18 (Núm. 6) Mich. L. Rev. 470 (1920).

 Como bien es sabido, el producto de una póliza no es parte del caudal relicto. Vélez et al. v. Bristol-Myers, 158 D.P.R. 130 (2002).

 “El notario podrá elevar a escritura pública un documento privado cuyo contenido es materia de contrato.
“En tal caso, el notario podrá optar por redactar nuevamente el contrato privado, pero hará constar en la escritura la existencia previa del documento privado.
“Podrá optar, además, por unir el contrato privado a la escritura que autoriza sin redactarlo nuevamente. En tal caso el notario relacionará el contrato privado, dará fe de haberlo leído, de haber aceptado su redacción, del número de folios de que consta éste, y de que su texto se incorpora como si estuviere transcrito, de todo lo cual los comparecientes en su presencia lo ratifican y firman el original de la escritura.
“En ambos casos será indispensable que comparezcan al acto todas las partes que intervinieron en el documento privado o, en su defecto, sus herederos, representantes legales o voluntarios a prestar su consentimiento.
“El notario cumplirá, además, con todas las formas y solemnidades que requiere la autorización de una escritura pública.” 4 L.P.R.A. Ap. XXIV, R. 26.